## 8037

### WALLACE v. WALLACE.

1. TRUSTS—REMAINDERMEN.—Where bank stock is left in trust to pay the income, profits or interest to one for life, with corpus to remaindermen, under the terms of this will, all accumulated values of the stock by retention of dividends by the corporation, not paid to the life tenant, pass to the remaindermen under her will. Neither the life tenant nor remaindermen are estopped by the acts of the life tenant from claiming such accumulated profits.

2. WHERE A TRUST FUND is lost in part by reason of deficient security, without fraud on part of trustee, the loss should fall proportionately on the life tenant and remaindermen.

Before PRINCE, J., Richland, April, 1910. Modified.

Action by H. B. Wallace, as trustee of Eliza Wallace, against Andrew Wallace *et al.* The Circuit decree is:

"This action is brought by the plaintiff as trustee of the estate of the late Miss Eliza Wallace, to obtain the construction of the will of the late Col. Andrew Wallace, and to determine the parties between whom the estate is now divisible, and for settlement of said estate and discharge of the trustee; to which action all parties who, under any construction of the will, might have an interest are made parties.

"The cause was referred to the master to ascertain and report his conclusions of law and fact, but upon the reference it was agreed by counsel that the master do not report his conclusions of law or his conclusions of fact relative to the ownership of the funds derived from the sale of bank stock; it being agreed that the questions of law and the facts relative to the bank stock be left for the determination of the Court; under this agreement the master has filed his report, to which there is no exception, finding that all parties are properly before the Court and the minors represented by their guardians, and that the facts stated in the complaint are true. And the cause came on to be heard before me at the first session of the Spring term of the Court of Common Pleas for Richland county.

"There is no dispute as to the facts necessary for the determination of the questions raised, and I shall content myself with briefly stating the substance of the facts necessary for an understanding of the conclusions of law reached upon the questions raised.

"In 1862 Mr. Andrew Wallace died, leaving his will, by which his estate was distributed among his ten children. By the 21st clause of his will he directed that the shares devised and bequeathed to his children, whether delivered or advanced before his death, or whether the same be given specifically or generally in the distribution of the rest and residue, as well as that they are to receive upon his death as that which they get after the death of their mother, also any share or shares which may return to them upon the death of any one or more of his children without leaving

descendants living at the time of such child's death, as is hereinafter more particularly provided; and all and every estate or interest which his children shall take under his will is 'given to my said children for their respective lives only, and, no longer, and such share or interest shall be held for my said children by the following trustees and upon the following trusts and limitations and conditions, and no others; that is to say: I give, devise and bequeath the respective shares of my children * * * and Eliza Wallace to my wife, Mrs. Sarah Wallace, and to my two sons, Edward Wallace and William Wallace * * * the said shares to be held by the said trustees, respectively, to and for the following uses and purposes; that is to say: The shares of my said daughters are to be held by my said trustees in trust for the sole and separate use, benefit and behoof of my said daughters, respectively, for and during the term of their respective lives, and no longer, and neither the corpus nor the income or profits of such shares is to be in any manner liable for the debts, contracts or liabilities, nor to be in any manner under the control of any of the husbands of my said daughters, respectively, or of any husband either of them may hereafter marry; and I hereby authorize, direct and empower the said trustees to pay over to my said daughters, respectively, during their respective lives, the annual income, interest or profits of their respective shares, taking the receipt of such daughter, respectively, for the same, which receipt alone shall constitute proper acquittance and discharge for such income or profits; and I expressly stipulate and provide that the receipt or discharge of the husbands of my said daughters shall not have the effect of discharging or releasing the trustees from their liability for such income or profits.'

"By the 22d clause of his will he provides: 'Upon the death of any one of my said children, the share or portion hereinbefore given to him or her for life shall be held by such trustees, respectively, in trust for such child or chil-

dren as my said son or daughter may leave living at the time of his or her death, share and share alike, the child or children of any deceased child of my said son or daughter to take among them the share which their parent would have taken if living. But in the event any of my said sons or daughters shall die without leaving a child or children, or the child or children of any deceased child living at the time of the death of such son or daughter, then the share of such son or daughter shall be equally divided amongst my surviving children and the child or children of a deceased child, these latter taking among them the share which their parent would have taken if living; and the same shall be held subject to all the trusts, limitations and conditions of this will in regard to the shares of my children hereinbefore expressed.'

"Edward Wallace, one of the life tenants and trustees of Miss Eliza Wallace, died during the war, just after his father, unmarried and without issue; Mrs. Agnes Taylor, another life tenant, died without issue on 22d November, 1884, and Mrs. Sarah Wallace, the mother, died in 1880; and the portions of the estate devised them, were, under the terms of the will, distributed amongst the surviving children of testator.

"William Wallace, the last surviving trustee of Miss Eliza Wallace, died on 13th November, 1902, and plaintiff, upon the application of Miss Eliza Wallace, was duly substituted as trustee by this Court on the 18th of December, 1902, and as such came into the possession of the estate, a schedule of which is annexed to the master's report.

"All of testator's children are now dead, Miss Eliza having last died unmarried and without issue on 12th December, 1907, leaving a will by which she devised and bequeathed to her grandnephew, A. W. Murdoch, whatever portion of her trust estate she had a right to dispose of.

"Upon the death of the life tenant, the trustee proceeded to liquidate the estate for the purposes of division, when he

was confronted with the difficulty which culminates in this action.

"The master reports the sales and contracts of sale made by the trustee full and fair, and recommends that they be confirmed, and in this I concur, and it is so ordered.

"Three questions are raised which I proceed to dispose of:

1. "Whether the limitation over to the trustee of the estate after the death of the life tenant without issue living at the time of her death is too remote?

2. "If not too remote, who are entitled to take thereunder?

"The limitation is to 'My surviving children and the child or children of a deceased child, these latter taking amongst them the share which the parent would have taken if living.'

"The limitaton to surviving children prevents the interposition of the rule as to remoteness. *Selman* v. *Robertson,* 46 S. C. 263.

"And the rule that where the limitation over is to a class after the happening of an event certain, only those who can bring themselves into the class at the happening of the event will take, excludes the great-grandchildren of the testator. *Clark* v. *Clark,* 19 S. C. 350; *Hayne* v. *Irving,* 25 S. C. 289; *Shanks* v. *Mills,* 25 S. C. 358; *Brown* v. *McCall,* 44 S. C. 503.

"Therefore the limitation over is good, only the persons answering the description of children of testator's deceased child take to the exclusion of his great-grandchildren, the children of grandchildren who predeceased the life tenant.

"The third question is more difficult, and it is:

3. "Whether the accretions of the bank stock, as shown by the difference in value of the stock at the time of its acquisition by the trust estate, and the value at the time of the death of the life tenant, due to accumulations in the interval of earnings represented in part by extra shares declared as stock dividends and in part by increase in *book*

*value* of the shares from the retention of earnings undistributed, should pass to the devisee of the life tenant or to the remaindermen?

"The stock in question does not appear to have been a part of the original trust estate, but is presumably investments made by the trustee for the estate, and is stock in live, going banks now engaged in business in the cities of Columbia and Charleston, and the book value is obtained by adding the undistributed surplus and undivided profits of the respective banks to the par value of the shares.

"On behalf of the remaindermen it is contended, that the intention of the testator disclosed by his will above quoted, is to give the life tenant only such 'annual interest, income or profits' as could be paid over annually to and receipted for by the life tenant during her life, and all undivided and undistributed accretions or profits beyond these to the remaindermen; and further, the life tenant is now estopped from claiming and has waived any right she may have had by conduct and acquiescence.

"I do not think that either of these contentions should prevail, and will proceed to state my conclusions as to same: To support the claim of estoppel and waiver, the plaintiff relies upon the positions, that the stock dividend of the Bank of Charleston, N. B. A., was distributed in 1893; that the plaintiff was appointed trustee upon the application of the life tenant, and after his appointment furnished the life tenant statements (Exhibits 'C' and 'D') in January, 1903, and in February, 1907, in which the stock is listed and its par, and in the latter statement the supposed value given; and that the evidence does not show that the life tenant made any claim for these accretions. I do not think, however, that these positions are sufficient to warrant the application of the doctrine of estoppel and waiver against the life tenant. Estoppel and waiver should ordinarily be based upon knowledge on the part of the party to be estopped and some injury or prejudice resulting to the other party from non-

action after such knowledge. The evidence fails to show these necessary elements of estoppel. On the contrary, it may be reasonably inferred from the testimony of the plaintiff and E. B. Wallace, son and administrator of the former trustee, that the life tenant did not have such knowledge; and certainly it cannot be contended that the rights of the remaindermen have been prejudiced by the life tenant's nonaction.' Moreover, the will of the life tenant shows that she intended to claim for herself and her devisee everything to which she might be legally entitled. I, therefore, find and hold that the life tenant and her devisee are not estopped to assert their rights as to this stock.

"With regard to the further question as to whether the increment to the bank stock belonged to the life tenant or to the remaindermen, my conclusions are as follows:

"Miss Eliza Wallace died on 12th December, 1907, leaving of force her will, of which the defendant, J. W. Murdoch, is the executor, and by which she gave all the property which she had the right to dispose of by will to the defendant, A. W. Murdoch. The estate in possession of the trustee for Miss Eliza Wallace consisted, at the time of her death, among other property, of the following shares of bank stock: thirteen (13) shares of the stock of the National Loan and Exchange Bank of Columbia, of the par value of one hundred dollars each; nine (9) shares of the State Bank, of the par value of one hundred dollars each; and nineteen and one-half (19½) shares of the Bank of Charleston, N. B. A., of the par value of one hundred dollars each. This stock was all sold by the trustee after the death of Miss Eliza Wallace, and he now holds the funds derived from such sale for the purposes of distribution among the persons entitled thereto. The evidence shows that during the currency of the life estate it was the policy of the several banks in which this stock was held not to distribute their entire annual earnings as dividends among their stockholders, but to retain a considerable part of such

earnings and allow the same to accumulate as surplus or undivided profits; and by reason of such accumulations this stock greatly enhanced in value during the time it was held by the trustee, and was sold by him at a sum correspondingly in excess of the amount of the trust fund originally invested therein. The sum realized upon the sale, which represents the enhanced price the stock sold for due to these accumulations of earnings during the currency of the life estate, is claimed by the representatives of the life tenant as earnings or profits to which the life tenant was entitled and which passed under her will; while on the other hand this sum is claimed by the trustee as part of the corpus of the trust estate passing to the remaindermen under the will of Andrew Wallace. The evidence shows that on the 1st October, 1897, ten (10) shares of the stock of the Central National Bank of Columbia were issued to the trustee of Miss Eliza Wallace, this stock having at that date the book value of approximately one hundred and thirty-four and 41-100 ($134.41) dollars per share. In 1903 the Central National Bank of Columbia was consolidated with the National Loan and Exchange Bank of Columbia, and thirteen (13) shares of the latter bank were issued to the trustee in lieu of the ten shares previously held in the Central National Bank of Columbia, the excess of the book value on the ten shares being thus converted into three extra shares, and upon this new issue each share having a book value of approximately par. At the death of Miss Eliza Wallace, each of these thirteen (13) shares had acquired a book value of one hundred and forty-four and 02-100 ($144.02) dollars, and the thirteen (13) shares have been sold by the trustee at one hundred and fifty ($150) dollars per share—the aggregate increment received, which the evidence shows to be clearly due to the accumulation of undistributed earnings during the currency of the life estate, being five hundred and twenty-eight and 66-100 ($528.66) dollars.

"As to the nineteen and one-half (19½) shares of stock in the Bank of Charleston, N. B. A., the evidence shows that these shares represent two blocks of stock which had been held by the trustee, or trustees, of Miss Eliza Wallace, one block—then represented by a certificate of five (5) shares having a book value of one hundred and twenty ($120) dollars per share—having been issued to the trustee for Miss Eliza Wallace in 1880; and the other block—then represented by a certificate for eight (8) shares having a book value of one hundred and fifty-five ($155) dollars per share—having become a part of the trust estate of Miss Eliza Wallace upon the death in 1884 of her sister, Mrs. Agnes Taylor. On June 24th, 1893, a fifty per cent. stock dividend having been declared by this bank, these blocks of stock were increased, respectively, to seven and one-half (7½) shares and twelve (12) shares, making the aggregate of nineteen and one-half (19½) shares, which have been disposed of by the trustee. This stock, when sold by the trustee, had a book value of two hundred and thirty ($230) dollars per share, and was sold for two hundred ($200) dollars per share. The aggregate increment received on account of the enhancement due to the accumulated earnings on both of said blocks of stock amounts to two thousand forty ($2,040) dollars. The nine (9) shares in the State Bank were purchased by the trustee in 1903 at one hundred and eleven ($111) dollars per share, the book value per share being then one hundred and ten and 72-100 ($110.72) dollars. At the death of Miss Eliza Wallace this stock had a book value of one hundred and fifteen and 73-100 ($115.73) dollars per share, and was subsequently sold by the trustee for one hundred and twenty ($120) dollars per share—the aggregate increment received, which is clearly creditable to accumulated earnings, being forty-two and 51-100 ($42.51) dollars.

"The legal question involved is one of some difficulty. The testator by his will gave the shares of his children to

trustees, who were directed 'to pay over to my said sons and daughters, respectively, during their respective lives, the annual interest, income or profits of their respective shares, taking the receipts of such daughters, respectively, for the same * * *.' I regard the direction to *pay over* the 'income or profits' as in effect the same as a gift of the income or profits, and I do not consider that by the direction that the trustee shall take the receipt of the daughters for the income paid them, the testator intended to limit the generality of the gift, but only to protect the estate of the daughters from the control of their husbands. In my view, therefore, the inquiry resolves itself into whether or not the increment upon the shares in question should be regarded as income or profits, or as corpus of the trust estate. This question has been fully argued before me and I have given the same careful consideration. While upon the subject of the distributions of dividends or earnings upon stock between life tenant and remaindermen the Courts are much divided, I am of the opinion that the strongest consideration of reason and justice support the rule which apportions such dividends or earnings between life tenant and remaindermen according to the time when such earnings were made, and not according to the chance action of corporate officers in withholding or declaring dividends; and I think that upon the sale of the stock, as here, in which the funds of the life estate have been invested, the increment in value due to the undivided profits or surplus earned and to the credit of the stock, though not declared by the corporation as dividends, should be awarded to the life tenant. *Simpson* v. *Millsap,* 80 Miss., 239. The evidence shows with reasonable certainty the amount of the selling price of the stock in question, which represented the value of the undistributed earnings upon the conversion of the stock into money by sale, and there appears to be no difficulty in fairly apportioning proceeds of sale between the representatives of the life

tenant and the remaindermen according to the equitable rule of apportionment just stated.

"The conclusions I have reached seem to me to be also in harmony with the principles underlying the decision in *Cobb v. Fant,* 36 S. C. 1.

"I accordingly hold that the increment in question is profit from the bank stock and belongs to the life estate; and it is hereby adjudged and decreed that such increment be paid over by the trustee to the personal representative of Miss Eliza Wallace, or his attorneys herein—this increment amounting in the aggregate, according to the figures already stated, to twenty-six hundred and thirty-one and 17-100 ($2,631.17) dollars. This fund should be paid over as ordered, together with any interest which may have accumulated thereon since the sale of the stock, less the commissions of the trustee.

"As to the Chandler mortgage: When this security came into the hands of the present trustee it was nearly barred by time and he procured a new mortgage on the same property in substitution, in which he added to the principal, seven hundred and fourteen ($714.00) dollars interest then in arrears. The mortgagor is dead and was insolvent, and the security is only worth what the land will bring at the pending foreclosure sale. Holding, as I do, that the value of the security at the time of the investment constitutes the value of the trust estate that passes to the remaindermen, it follows that the principal must be made good from the proceeds of the sale before any part thereof is applicable to the estate of the life tenant, and it is so adjudged.

"It is therefore ordered, adjudged and decreed:

"That the sales and contracts of sale of the bank stock made by the trustee and reported by the master, be confirmed, and that the master's report be confirmed.

"That the parties now entitled to participate as remaindermen in the distribution of the trust estate are testator's grandchildren, the children of his deceased children who

were living at the time of the death of the life tenant, Miss Eliza Wallace, to the exclusion of his great-grandchildren, the children of his grandchildren who predeceased the said life tenant.

"Further ordered: That from the funds in his hands the trustee, after deducting his commissions, pay the costs and expenses of this suit, including the fees fixed by the Court for plaintiff's attorney and the guardians *ad litem* of the infant defendants; next, that he pay to J. W. Murdoch, executor of Miss Eliza Wallace, or to his attorneys herein, the sum hereinbefore adjudged to pass under her will, less his commissions in the same, and that he divide the balance into seven equal shares and distribute one equal share thereof among testator's grandchildren, children of testator's respective children who were alive at the date of the death of the life tenant, to wit:

1. One share to the children of Dr. John Wallace;
2. One share to the children of Wm. Wallace;
3. One share to the children of Alfred Wallace;
4. One share to the children of Mrs. Murdoch;
5. One share to the children of Mrs. Pearson;
6. One share to the children of Mrs. Evans, and,
7. One share to the children of Mrs. Yates.

"All of whom are named in the sixth paragraph of the complaint, to the exclusion of the other defendants herein; and upon such distribution being made the trustee be discharged from any and all further trusts and liability."

The plaintiff and defendants, J. W. Murdoch, as executor and in his own right, and A. W. Murdoch, appeal.

*Mr. Walter T. Green,* for plaintiff, cites: *The will must govern and under that only annual profits are to be paid the life tenant:* 36 S. C. 16; 136 U. S. 549; 19 N. J. Eq. 176; 18 Abb. New Cas. 178; 80 Miss. 270; Cook on Corp. 557. *Where one number of shares are exchanged for more the additional shares are corpus:* 28 Ency. 917, note; 201 Penn.

St. 523; 12 L. R. A. (N. S.) 807; 2 Cook on Corp. 1043; 10 Cyc. 554; 9 Ency. 714; 28 Ency. 1135. *Loss in investment falls on remaindermen:* 28 Ency. 917.

*Messrs. Melton & Belser,* for defendants-appellant, cite: *Rights of life tenant and remaindermen in extraordinary dividends:* Cook, sec. 555; 12 L. R. A. (N. S.), note 775; 93 Ky. 257; 104 N. Y. 618; 9 Ency. 717, 710; 28 Pa. 374; 57 N. J. Eq. 327; 26 N. J. Eq. 11; 19 N. J. Eq. 179; 39 L. R. A. 230; 33 L. R. A. 860; 136 U. S. 549; Thomp. on Corp., sec. 2222; Morawitz Priv. Corp., sec. 468; 1 Spelling Priv. Corp., sec. 547, note 2; 1 Cook, sec. 554; 2 Beach Priv. Corp., sec. 600; 2 Thomp., sec. 2192; 12 L. R. A. (N. S.) 815; 36 S. C. 1; 33 L. R. A. 863; 9 Ency. 716, note; Harp. Eq. 52; 80 Miss. 269. *Effect of sale of stock with accumulated profits:* 19 Beav. 295; Cook, sec. 560; 80 Miss. 275. *Life tenant is estopped from claiming increment on stock:* 42 S. C. 351; 13 S. C. 370, 362; 12 S. C. 354; 67 S. C. 454; 2 Ency. 434; 29 Ency. 1092-3. *Loss in investment should be divided pro rata between life tenant and remaindermen:* 56 N. J. Eq. 206; 31 N. Y. App. Div. 146; 2 Lewis on Trusts 1228; 54 L. J. C. 432; 48 N. J. Eq. 206; 4 Dick. ch. R. 262.

November 15, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action involves the construction of the late Col. Andrew Wallace's will, and was brought by the plaintiff, as trustee of Miss Eliza Wallace, for the purpose of determining the persons to whom her estate descended, and the manner in which it is to be distributed.

The facts are fully stated in the decree of his Honor, the Circuit Judge, which will be set out, in the report of the case.

The first question that will be considered is, whether there was error, on the part of his Honor, the Circuit Judge, in his ruling, that the accretion of the bank stock, as shown by the difference in value of the stock at the time of its acquisition by the trust estate, and the value at the time of the death of the life tenant, due to accumulations in the interval of earnings, represented in part by extra shares declared as stock dividends and in part by increase in book value of the shares, from the retention of earnings undistributed, passed to the devisees of the life tenant and not to the remaindermen.

Where property is given in trust, the interest, income, or profits of which, is to be paid to one for life, and the principal paid to another, after the death of the life tenant, questions of difficulty frequently arise in determining whether certain receipts and profits are to be regarded as income, which is to go to the life tenant, or as *corpus* belonging to the remainderman.

As a rule the life tenant takes the interest on a trust fund from the death of a testator, but, of course, it is subject to testamentary provisions.

In the case of *Cobb* v. *Fant,* 36 S. C. 1, 14 S. E. 959, a mother transferred bank stock to a trustee "to pay the dividend, income, issues, and profits thereof, as they may accrue, to me for and during the term of my natural life, and at my death to continue the collection of the same, and divide them, that is, the income and profits equally between my said daughters, for and during the terms of their natural lives," with directions for sale and division of the stock among the issue of the daughters in remainder. At the time of the transfer, undivided profits had already accrued, and while dividends were declared, and received by the mother every year, other profits were made and accumulated, until the bank closed its business and distributed its assets, when the accumulated profits amounted to 400 per cent. in all. It was held that the *cestui que trust* for

life, was entitled to all the profits which accumulated after the date of the deed, but that profits already accrued at that time, were a part of the *corpus* of the trust estate.

In that case his Honor, the Circuit Judge, decided, "that the accumulated dividends are certainly profits of the stocks, and the general rule in such case is, that the profits inure to the life tenant, and to the same purport are the terms of this trust. Although there is some conflict in the authorities upon the question, it appears to me, that upon principle and sound reason, plaintiff is entitled to the relief demanded."

In reviewing this ruling the Supreme Court said: "It is admitted that the Circuit Judge announced the correct rule, as to all dividends declared, ordinary or extraordinary; but the trustee suggests that it does not apply to a case like this, where the extra profits have never been declared as dividends at all, so that they could not be paid over 'as they accrued,' but were retained in the bank, which, now closing out, proposes to pay these accumulated profits to the stock holders, along with the original stock. He insists that in such case the rule is, that the enhanced price of stock, by reason of dividends earned, but not declared, will be considered as capital, and must be reinvested for the benefit of the remaindermen, and cites authorities for the doctrine. Upon general principles there may be some force in this view; but here the trust deed is the law of the case.

"The plaintiff had the right to make or not to make the deed as she thought best, and making it she had the right to frame the terms as she pleased; and she made them so strong that we do not feel authorized to disregard them, in favor of any supposed general rule of practice upon the subject. * * * We hold that all the issues and profits which accrued after the deed was executed, belong to the plaintiff the *cestui que trust* for life." The words in that case, which were construed to include the enhanced value of the shares of stock, are similar to those in the present case, and there is no difference in principle between the two cases.

But even if this was an open question, the authorities cited in the argument of the respondent's attorneys show, that this rule is just and reasonable and should be followed.

The exceptions assigning error in this respect, are therefore overruled.

The next assignment of error on the part of the Circuit Judge, which will be considered, is as follows:

"That he erred in holding under the facts and circumstances of this case, that the life tenant was not estopped and has not waived any rights she may have had, to claim the accretions upon said bank stock; whereas, he should have held, that her action in placing these shares in the hands of her trustee, the plaintiff, as part of the trust estate, her silence, and the failure to claim the same during her lifetime, coupled with the facts disclosed by the letters and exhibits of the trustee to her, were sufficient to show knowledge, acquiescence, and waiver on her part, and prevents her from devising the same."

For the reasons stated by the Circuit Judge this exception is overruled.

The last assignment of error is as follows: "That his Honor erred in holding and adjudging, that from the proceeds of sale under the Chandler mortgage, held by H. B. Wallace, trustee, the original sum loaned to the Chandlers, should be made good to the remaindermen, before any part of the proceeds of such sale should go to the representatives of the estate of the life tenant; whereas, it is submitted, he should have found and adjudged, that the Chandler bond and mortgage for two thousand ($2,000) dollars was given to H. B. Wallace, trustee, to secure twelve hundred and eighty-six ($1,286) dollars belonging to the trust estate, and seven hundred and fourteen ($714) dollars belonging to the individual estate of Miss Eliza Wallace, and so holding, should have adjudged that the said bond and mortgage were owned by the trust estate, and the individual estate of Miss Eliza Wallace, in

proportion to those amounts, respectively, and that the representatives of the estate of Miss Eliza Wallace, the life tenant, were entitled to share in all proceeds of sale of the mortgaged property, in proportion to the individual interest and ownership of Miss Eliza Wallace, in said bond and mortgage."

In the case of *Hagan* v. *Platt,* 48 N. J. Eq. 206, 21 Atl. Rep. 860, the rule is thus correctly stated, in the syllabus of the case by the Court: "When a fund is held in trust, for the benefit of one person for life, and to go to another in remainder, and a loss of a part of the fund occurs, arising out of insufficient security of a particular investment, such loss is to be apportioned between the tenant for life and remainderman, in the proportion which the principal sum involved in the insufficient security, bears to the interest due upon it at the time when the security is realized upon, and the amount of the loss determined."

In the case of *In re Tuttle,* 49 N. J. Eq., 259, 24 Atl. 1, the principle is thus stated: "The remaindermen claim that as it is less than the principal invested, it all belongs to them, that the responsibility for all loss to the fund must be charged to the life tenant. This insistment throws the responsibility for the management of the trust upon the life tenant, and that is not right. If the trustee can be charged with negligence or bad faith, he should be held responsible, but, if he be not so chargeable, and a loss happens from causes over which neither he nor the life tenant nor the remaindermen had control, it should not fall upon the life tenant alone. The trust does not exempt the remaindermen from possible perils through failure of investments, and throw these perils entirely upon the life tenant.

"The trust is instituted, so that a person impartial between the life tenant and remaindermen, may put the fund in a situation where it will not only yield income, but also be safe. If that situation fails, the loss should be equally

apportioned, between the innocent life tenant and remaindermen, according to their respective rights, at the time the loss is ascertained, and the apportionment of it is made."

This rule was also followed in the case of *Parker* v. *Seeley,* 56 N. J. 110, 38 Atl. 280.

In *Cox* v. *Cox,* L. R. 8 Eq. 343, where a similar question was involved, Sir William M. James, V. C., said: "The true principle in all these cases is, that neither the tenant for life nor the remainderman, is to gain an advantage over the other, neither is to suffer more damage in proportion to his estate and interest than the other suffers, from the default of the obligor. The two must share the loss in the same way as they would have shared it, had it occurred when they first became entitled in possession to the fund."

Furthermore, in considering the first question presented by the exceptions, we announced the conclusion that the life tenant was entitled to the income, interest and profits on the shares of stock, even when they arose from the enhanced value of the corpus, for the reason that such was the intention of the testator, as shown by the language of the will. Therefore, the income, interest, and profits cannot be taken from the estate of the life tenant, and used for the benefit of the remaindermen, without violating the provisions of the will.

This exception is sustained.

It is the judgment of this Court that the judgment of the Circuit Court be modified, in accordance with the principles herein announced, and that in all other respects it be affirmed.