**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANKLIN D. BEATTIE, Trustee, Julia
Tull Walker Trust FBO Myra H.
Walker,
<u>Plaintiff-Appellee,</u>

No. 97-2746

v.

J. M. TULL FOUNDATION,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-96-1940-2-18)

Argued: March 3, 1999

Decided: April 16, 1999

Before WILKINSON, Chief Judge, and MICHAEL and
MOTZ, Circuit Judges.

_____

Affirmed in part and reversed and remanded in part by unpublished
per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jay D. Bennett, ALSTON & BIRD, L.L.P., Atlanta,
Georgia, for Appellant. Harold Simmons Tate, Jr., SINKLER &
BOYD, P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:**
Elizabeth A. Gilley, Meredith E. Mays, ALSTON & BIRD, L.L.P.,

Atlanta, Georgia; Steven D. Groves, Michael A. Molony, Edward D. Buckley, YOUNG, CLEMENT, RIVERS & TISDALE, Charleston, South Carolina, for Appellant. J. Donald Dial, SINKLER & BOYD, P.A., Columbia, South Carolina; Richard S. Rosen, Kevin R. Eberle, ROSEN, ROSEN & HAGOOD, P.A., Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this diversity case we must interpret the provisions of a will creating a testamentary trust. The district court declared that the will required the trustee to allocate all capital gains as income payable to the life beneficiary; the court also held that the trustee had not breached his fiduciary duty or committed fraud. Because the will grants the trustee authority to allocate capital gains as income or principal, or part income and part principal, we reverse the district court's contrary declaratory judgment and remand for further proceedings, but for the reasons set forth within, we affirm in all other respects.

I.

Julia Tull Walker died in 1965 leaving a will that created multiple trusts. The income of each trust was granted to a series of life beneficiaries. The final life beneficiary in each trust was Julia Tull Walker's daughter-in-law, Myra Hunter Walker. Upon Myra's death, the assets remaining in the trusts would be distributed to the J.M. Tull Foundation. The will named John Walker, Julia Tull Walker's son, as trustee with Myra Walker to succeed him in the event of his death. The parties have referred to the separate trusts created by Julia Tull Walker's will collectively as the "Julia Tull Walker trust." We shall refer to the trust in the singular, as well.

2

The trust was funded with shares of J.M. Tull Metal & Supply Company. By 1985 Myra Walker was the sole living life beneficiary of the trust, as well as its trustee. During that year, Bethlehem Steel acquired J.M. Tull Metal & Supply. The J.M. Tull stock, with a basis of $216,563, was sold for $1,908,390 generating $1,691,827 in capital gains. Myra Walker invested the proceeds of the stock sale in two life insurance policies. One policy insured the life of her nephew, Franklin D. Beattie; the other insured the life of Beattie's then wife, Jane Beattie. Each policy required a single premium payment of $900,000 and provided that the "Myra H. Walker Trust" owned the policy and was the beneficiary of the premium paid ($900,000 on each policy) with the balance, if any, to go to the Beattie children. Both parties agree that, although the insurance policies identify the owner and principal beneficiary as the "Myra H. Walker Trust," this was meant to refer to the Julia Tull Walker trust. The trust's tax returns for that year listed the capital gain from the sale of the Tull stock. Until her death, Myra Walker received interest income and occasionally made other relatively minor monetary withdrawals from the policies.

In 1995, Myra Walker became incapacitated and the South Carolina probate court appointed Franklin Beattie as her conservator. Beattie sought appointment as trustee, representing to the Foundation that his goal was to pursue "[a]n investment strategy most likely to protect the interest of [Myra] Walker and the Tull Foundation." After initial reluctance, the Foundation consented to the appointment of Beattie as trustee. Beattie contends that after he became trustee -- and was given access to relevant trust documents -- his attorney informed him that Julia Tull Walker's will entitled Myra Walker, as life beneficiary of the trust assets, to the 1985 capital gains with which she had purchased the insurance policies.

In the spring of 1996, soon after his appointment as trustee, Beattie, acting as trustee, borrowed the cash value of the insurance policies and distributed over $1 million to Myra Walker. On May 28, 1996, Beattie proceeded to file this declaratory judgement contending that the will's provisions creating the trust required Myra Walker, as trustee, to allocate as income to the life beneficiaries all capital gains received from the sale of the stock. In 1997, Myra Walker died.

In a June 23, 1997 order, the district court granted Beattie summary judgment. The court declared that the will's inclusion of capital gains

in its definition of income prohibited the trustee from apportioning to principal any part of the capital gains realized from the sale of the Tull stock. Thus, no part of the insurance policies purchased with those capital gains could be allocated to principal (and thus become the property of the remainder beneficiary, the Foundation). Rather, the court held that the will required Myra Walker, as trustee, to allocate all capital gains to income, which became the property of the life beneficiary, Myra Walker (and subsequently, her estate). The court also rejected all of the Foundation's defenses finding that laches, equitable estoppel, the doctrine of unclean hands, and South Carolina's statute of limitations did not bar Beattie's action. Finally, in a November 12, 1997 order, the court granted Beattie summary judgment on the Foundation's counterclaims, finding that Beattie had not breached any fiduciary obligation and had not defrauded the Foundation. The Foundation appeals.

We review de novo the district court's decision to grant summary judgment. See Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). As a federal court sitting in diversity, South Carolina law and principles of construction govern the interpretation of the will. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

II.

Our initial task is to interpret the provisions of Julia Tull Walker's will and decide whether those provisions mandate, as the district court found, that the trustee apportion all capital gains to the life beneficiary as income, or whether those provisions allow, as the Foundation argues, the trustee discretion to allocate capital gains as income or principal.

In interpreting the provisions of a will under South Carolina law, a court must seek to effectuate the intent of the testator unless it contravenes some well-settled rule of public policy. See Leathers v. Leathers, 121 S.E.2d 354, 355 (S.C. 1961). In ascertaining the testator's intent, a court must resort first to the language of the will and "if the language is perfectly plain and capable of legal construction, the language determines the form and effect of the instrument." Sarlin v. Sarlin, 430 S.E.2d 530 (S.C. Ct. App. 1993). When a will contains

4

apparently conflicting provisions, they must be reconciled, if that can be done by any reasonable construction comporting with the intent appearing from consideration of the will as a whole. See Peoples Nat'l Bank v. Barlow, 112 S.E.2d 396 (S.C. 1960). Thus, a court should not consider the provisions of the will piecemeal; rather "[t]he intent must be gathered from the whole instrument." Shevlin v. Colony Lutheran Church, 88 S.E.2d 674, 677 (S.C. 1955).

In Julia Tull Walker's will she provided that Myra Walker would receive the Tull stock in trust "for the term of her [Myra's] natural life, she to enjoy the income (as hereinafter defined) derived from said stock or any replacement thereof and at her death I [Julia Tull Walker] give said stock or any replacement thereof to the J.M. Tull Foundation absolutely and forever."

The will provides that the trustee will "not be liable for any loss . . . occasioned by [her] acts in good faith, nor for honest errors in judgment." Furthermore, in section XVI, the will grants the trustee broad powers to administer the trust, including the power to sell real and personal trust property, invest and reinvest trust property, and borrow money. Significantly, the will specifically grants the trustee the power to "apportion stock and extraordinary dividends rights and options and other items received and charges incurred between income and principal, which apportionment shall be exercised in[her] uncontrolled discretion." (Emphasis added).

A stand-alone provision near the end of the will contains the definition of income:

> INCOME SHALL include but not be limited to all cash dividends, stock dividends, or any other type of dividend, stock options, and any capital gains derived from the sale or exchange of any stock or other property which may be included in any trust fund or fund over which there is a life estate.

(Emphasis added).

Thus, the will vests the trustee with broad discretionary powers. These include the unfettered right to apportion between income and

5

principal certain enumerated items including stock dividends and extraordinary dividends, as well as "other items received." On the other hand, the will permits Myra Walker, as a life beneficiary, to "enjoy the income . . . derived from stock"; and it provides that income "shall" include capital gains.

The Foundation contends that the will evidences Julia Tull Walker's intent to grant the trustee "the broadest discretion possible." It points to the provision granting the trustee's apportionment power, which permits the trustee to apportion all "other items received" in her "uncontrolled discretion," and it asserts that this language should be interpreted to include the power to apportion capital gains as the trustee sees fit. The Foundation argues that no term, express or implied, in the will operates to require the trustee to apportion all capital gains to income. The use of the term "shall" in the definition of income does not, according to the Foundation, mandate that capital gains be apportioned as income because "`shall' can be construed in a permissive, rather than a mandatory, sense." Finally, the Foundation contends that Beattie's interpretation of the will, which the district court adopted, creates a conflict between two of its provisions: one paragraph requires <u>all</u> items listed in the income definition including "cash dividends, <u>stock dividends or any other type of dividend</u>" be allocated to income, and another paragraph explicitly provides that a trustee may apportion "<u>stock and extraordinary dividends</u>" between income and principal. (Emphasis added).

Beattie contends that the will's gift of stock to Myra for life so that she could "enjoy the income" derived from it, the inclusion of cpaital gains in the will's definition of "income," and the will's failure to provide the trustee with the express power to apportion capital gains, read together, require us to conclude that the trustee must allocate all capital gains to income. According to Beattie, the term "enjoy" has a definite meaning in probate matters suggesting "the right to use, alienate, or reinvest." The income definition thus delineates those items to which the life beneficiaries have unfettered ownership rights. Beattie further argues that his construction of the will is the only one that effectuates Julia Tull Walker's intent to provide for her family members and heirs.

We have little doubt that Julia Tull Walker intended to provide as generously as possible for her family members during their lifetimes.

6

However, also clearly evident from the will is her intent to provide the trustee with broad powers to administer the trust. Almost two full pages (of a five page will) are devoted to outlining the powers explicitly conferred on the trustee. Furthermore, the will provides the trustee with "uncontrolled discretion" in the exercise of her apportionment power. Our reading of Julia Tull Walker's dual intent is consistent with that of a South Carolina court that construed her will in 1966. See Walker v. Walker, Final Decree from Georgetown County Court of Common Pleas, Slip Op. (May 16, 1966). That court found that "[i]t is apparent . . . that [Julia Tull] Walker intended for the life tenants to receive any and all income arising from the trust funds, and put no reservation or restriction on the income whatsoever." Id. at 3-4. The court further noted that "she did not intend to limit the income of the life tenants, nor did she intend to limit the powers and authority of the trustee as named in said Will." Id. at 4. Thus, while the state court recognized Julia Tull Walker's intent to provide for the life beneficiaries, it also recognized her intent to afford the trustee a large measure of discretion in maintaining the trust assets. As the district court correctly noted, the state judge's pronouncements are dicta; however, they do demonstrate that our own understanding of Julia Tull Walker's intent accords with that of one experienced in such interpretation under South Carolina law.

The core of Beattie's argument is that the "income" definition in the will delineates items that the life beneficiaries "shall" enjoy and that, therefore, the trustee must apportion all items within that definition as income payable to the life beneficiaries. That interpretation is consistent with Julia Tull Walker's intent to provide "as adequately as she could" for the life beneficiaries, but it is entirely at odds with her intent to grant the trustee the broadest powers possible.

If Julia Tull Walker had intended to prohibit the trustee from allocating capital gains to principal, she could have directly said so in any number of ways. For instance, in Wallace v. Wallace, 72 S.E. 553 (S.C. 1911), on which Beattie relies, the will directed the trustee to pay the life beneficiaries, "the annual income, interest or profits" from stocks held by the trust. Id. at 554. Thus, the will, by its terms, mandated that the trustee pay profits from the sale of stock (i.e. capital gains) to the life beneficiary. See id. Rather than expressly limiting

7

the powers of the trustee in this way, Julia Tull Walker's will grants the trustee extremely broad powers.

Furthermore, interpreting the will as Beattie suggests would require us to read into the trustee's generally broad powers an exception, and an exception that seems without reason. This is so because, although Beattie seems to believe otherwise, permitting the trustees to apportion capital gains to income or principal, as the trustee deems best, does not prevent the trustee from allocating all capital gains to income for the benefit of the lifetime beneficiaries. We simply cannot find any rationale for Julia Tull Walker hobbling the powers of the trustee, where granting the trustee broad powers does not in any way frustrate her intent to provide for her family during their lives.

Moreover, we must interpret the will where possible to avoid absurd results. See Harper v. Gibson, 325 S.E.2d 586, 587 (S.C. Ct. App. 1985). Section XVI(e) of the will affords the trustee discretion to apportion "stock." It is difficult to imagine how a trustee would exercise the express authority to apportion stock, but be without any authority to apportion capital gains arising from the sale of that very stock. In fact, if the trustee, in her discretion, apportioned stock between income and principal (or entirely to principal) and subsequently sold all of the stock, the capital gains on the sale of the stock previously allocated to principal would, under Beattie's interpretation, suddenly transmute into income. We are reluctant to read the will to produce such an anomalous outcome.

There is, we believe, a more reasonable explanation for the structure of Julia Tull Walker's will. In 1964, when this will was drafted, South Carolina followed the "Pennsylvania rule" for apportionment. See Cothran v. South Carolina Nat'l Bank of Charleston, 130 S.E.2d 177, 181 (S.C. 1963); South Carolina Nat'l Bank of Charleston v. Arrington, 165 S.E.2d 77, 84 (S.C. 1968) (Bussey, J., dissenting). The Pennsylvania rule is a default rule that applies to apportionment of dividends and capital gains where the testator's intent concerning the proper apportionment of these items cannot be gleaned from the will or trust documents. See Cothran, 130 S.E.2d at 181; see also George Gleason Bogert, The Law of Trusts and Trustees § 823 (2d ed. 1981) ("Obviously the settlor may direct the disposition of such [items], or

8

may give the trustee power to allocate them in his discretion."). When a will or trust is silent on the testator's intent, the Pennsylvania rule

> treats all declared dividends, whether in cash or stock, as income to the life beneficiaries to the extent that the earnings from which the dividend is declared accumulated since the acquisition of the stock by the trustee. This rule also treats [ ] profits from the sale of stock by the trustee during the life tenancy . . . as apportionable between the life tenant and remaindermen, if the profit was due to an accumulation of earnings by the corporation.

Cothran, 130 S.E.2d at 181 (emphasis added).

The Pennsylvania Rule, as applied to profits from the sale of stock (i.e. capital gains) has been criticized because it requires the trustee, at often considerable expense to the trust, to determine the cause for an increase in the market price of a stock. See Bogert at § 823; Arrington, 165 S.E.2d at 84 (Bussey, J., dissenting). Perhaps this expense and complexity contributed to the South Carolina legislature's decision in 1986 to statutorily overrule the Pennsylvania rule by adoption of the Revised Uniform Principal and Income Act, S.C. Code Ann. § 62-7-401 to 421 (Law. Co-op. 1987 and Supp. 1998).

At the time Julia Tull Walker's will was written, however, the drafter had to be cognizant of the Pennsylvania rule. See Shevlin, 88 S.E.2d at 677 (court must consider intent "in the light of the circumstances known to the testator at the time of execution"). If her will had been silent on the subject of capital gains, only a portion of those gains -- those due to an accumulation of income by the corporation since the acquisition of the corporation's stock by the trust -- would be allocable to income. The trustee would have been required to allocate the remainder to principal. Furthermore, the trustee would have been saddled with the difficult and costly task of determining what part of the gain was due to an accumulation of income. We can reasonably infer that Julia Tull Walker purposefully included capital gains in the definition of income in order to avoid the default application of the Pennsylvania rule, not to eliminate the trustee's power to allocate such gains as the trustee deemed appropriate. Thus, consistent with the broad discretion given the trustee, we construe the will

9

to provide that the trustee's power to apportion "other items" includes the power to apportion capital gains.

Beattie contends that interpreting the term "other items" to include capital gains would mean that every item listed in the will's definition of income would be apportionable by the trustee. Thus, cash dividends (which "shall" be income) could be apportioned by the trustee. This may be so, but such an interpretation accords with Julia Tull Walker's intention to grant extensive "powers and authority [to] the Trustees" and does not in any way impose "a restriction" on the income available to the life tenants. Walker v. Walker, Slip Op. at 4.

In sum, we find the most reasonable interpretation of the will, and that which best effectuates Julia Tull Walker's intent, is one that permitted the trustee, in her discretion, to apportion capital gains between income and principal. Therefore, in 1985, Myra Walker, as trustee, had the discretion to allocate the capital gains generated by the sale of the stock as income, principal, or part income and part principal.

Citing conflicting facts, the parties dispute how Myra Walker intended the capital gains realized from the sale of the Tull stock to be apportioned when she reinvested those gains in the two insurance policies in 1985. At this juncture, neither party is entitled to summary judgment. Accordingly, we remand the case to the district court for determination of this issue.

III.

The Foundation also claims that laches, equitable estoppel, the doctrine of unclean hands, and South Carolina's statute of limitations, see S.C. Code § 15-3-600 (Law. Co-op. 1977 and Supp. 1998), bar Beattie from bringing this declaratory judgment action. After careful consideration of the arguments, briefs, record, and applicable law, we agree with the district court that these defenses are without merit.

IV.

In a separate order, the district court granted summary judgment to Beattie on the Foundation's counterclaims that Beattie breached his

10

fiduciary duty by attempting to have the insurance policies allocated as income to Myra Walker and fraudulently obtained his position as trustee.

In general, a trustee has a duty to exclude all "selfish dealings" made on his behalf. See Ramage v. Ramage, 322 S.E.2d 22, 27 (S.C. Ct. App. 1984). Thus, courts may scrutinize a trustee's potentially self-interested actions. See S.C. Code Ann. § 62-7 706 (permitting a court to intervene in the action of a trustee where the trustee has a conflict of interest). Furthermore, a trustee owes a fiduciary duty to all beneficiaries, see Yates v. Yates, 354 S.E.2d 800 (S.C. Ct. App. 1987), and therefore must administer the trust "with due regard to the respective interests of income beneficiaries and remaindermen." S.C. Code Ann. § 62-7-404(a). A trustee's actions, first and foremost, must be governed by the provisions that created the trust. These provisions may give the trustee discretion to favor one beneficiary over another. In certain instances, they may require that a trustee favor one beneficiary. In the former case, the trustee may favor one beneficiary, but a court will review the trustee's decision for an abuse of discretion. See Restatement (Second) of Trusts § 187 (1957). In the latter case, the trustee can abuse his discretion only if he fails to implement the mandates of the will.

The district court concluded that because Beattie was merely following the express dictates of the will (i.e., that all capital gains must assertedly be allocated to income), he did not breach his fiduciary duty. Given our reversal of the district court as to the proper interpretation of the will, this reasoning no longer directly applies. However, the fact that the district judge, an experienced member of the South Carolina bar, interpreted the will in the same manner as Beattie, provides strong evidence that Beattie's interpretation was reasonable and made in good faith. Although Beattie's interpretation favored the life beneficiary over the remainder beneficiary, we cannot say that it constituted an abuse of discretion. Accordingly, we agree that Beattie did not breach his fiduciary obligation.

The Foundation also contends that Beattie fraudulently obtained his position as trustee by misrepresenting to the Foundation in an August 30, 1995 letter that he had no interest in "inheriting the funds" of the trust. To prove fraud in South Carolina law a plaintiff must show:

11

> (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

Sorin Equipment Co., Inc. v. The Firm, Inc., 474 S.E.2d 819, 823 (S.C. Ct. App. 1996).

The parties dispute whether Beattie's statement in the 1995 letter constitutes a misrepresentation. Admittedly, Beattie knew that he was a beneficiary of Myra Walker's will. Beattie claims, however, that, prior to his appointment as trustee, he was unaware of Myra Walker's asserted absolute right to all of the capital gains. Beattie thus claims that at the time he referred to "the funds" in his letter, he was in fact unaware that he had an interest in the trust's funds. Beattie's knowledge and intent are issues of fact that normally would be decided by a factfinder.

However, in this case, the district court concluded that because the alleged fraud resulted in no damages, the Foundation could not prevail on its fraud claim. See United Merchants & Mfrs. v. South Carolina Elec. & Gas Co., 113 F. Supp. 257 (W.D.S.C. 1953). The court explained that "[w]hoever had been appointed as trustee would have had to obey the express instructions of the settlor as determined by the Trust terms." Even though we have concluded that the district court erred in interpreting the will, this reasoning remains persuasive. No matter what the ultimate resolution in this case, Beattie's alleged misrepresentation will have no effect on the correct amounts to be allocated to interest and principal. On remand, Myra Walker's intent with respect to the allocation of the capital gains will be conclusively determined. The Foundation will be entitled to some, none, or all of the capital gains. This will be determined by Myra Walker's words and acts; Beattie's asserted misrepresentation will play no part in determining the Foundation's entitlement. Therefore, that misrepresentation will not lead to any "consequent and proximate injury" and remains insufficient to demonstrate fraud.

12

V.

For the reasons stated above, we reverse the district court's grant of summary judgment to Beattie and remand to the district court for further proceedings. We agree with the district court that the Foundation's affirmative defenses are without merit, and we affirm the court's grant of summary judgment to Beattie on the Foundation's counterclaims.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART