## 12295

### GIST *ET AL.* v. CRAIG *ET AL.*

#### (141 S. E., 26)

1. LIFE ESTATES—LIFE TENANT SELLING STOCK MUST ACCOUNT TO REMAINDERMAN ONLY FOR VALUE OF STOCK WHEN SHE RECEIVED IT; INCREASE IN VALUE BEING HER ABSOLUTE PROPERTY.—Where one holding life estate in shares of stock sold them during her life at increased value, such increased value should be considered earnings and part of life tenant's absolute property; she being required to account to remaindermen only for value as of date she received them, with interest from date of her death.

2. LIFE ESTATES—INCREASED VALUE OF BANK STOCK ARISING FROM UNDISTRIBUTED SURPLUS AND UNDIVIDED PROFITS GOES TO REMAINDERMEN, IN ABSENCE OF CONTRARY TESTAMENTARY PROVISION.—Where value of bank stock increased while held by life tenant owing to surplus and undivided profits held by bank as going concern, increased value is part of stock and goes to remaindermen at termination of life estate, in absence of contrary provision in will, since stockholder has no title to net earnings until division is declared.

3. WILLS—ITEM OF WILL DISPOSING OF BANK STOCK, WATCH, FURNITURE, AUTOMOBILE, "AND ALL PERSONAL PROPERTY * * * NOT MENTIONED HEREIN," HELD NOT TO COVER CHOSES IN ACTION;. "HEREIN."—Under item of will disposing of bank stock, watch, silver, household furniture, automobile, "and all personal property owned by me not mentioned herein," last provision covered articles of personal nature similar to those enumerated, since "herein" referred to provisions of that item and not to will generally, so that beneficiary under such item was not entitled to personal property consisting of choses in action.

4. WILLS—TERM OF EXTENSIVE SIGNIFICATION IN WILL FOLLOWING SPECIFIC ENUMERATION CONFINED TO PARTICULAR CLASS EMBRACES ONLY THINGS "EJUSDEM GENERIS."—Where testator uses terms evidently limited to particular class of known species of things, and subjoins a term of very extensive signification, this term, however general and comprehensive, embraces only things "ejusdem generis," which includes only those of same kind or species.

NOTE: On right as between life tenants and remaindermen to the increase in the value of the estate, see annotation in 13 A. L. R., 1004 *et seq.;* L. R. A., 1915-C, 851; 17 R. C. L., 632; 3 R. C. L. Supp., 717; 4 R. C. L. Supp., 1145; 6 R. C. L. Supp., 1027.

5. WILLS—BENEFICIARY UNDER WILL, BEQUEATHING PROCEEDS FROM COLLECTION OF NOTES AND SALE OF LAND, HELD NOT ENTITLED TO BANK DEPOSITS, NOT SHOWN TO HAVE BEEN DERIVED FROM, OR COTTON NOT PURCHASED WITH, PROCEEDS.—Under item of will disposing of moneys received from collection of notes and mortgages and sale of real estate, beneficiary *held* not entitled to bank deposits not shown to be derived from collection of notes nor to cotton owned by testatrix at her death.

6. WILLS—BEQUEST OF PROCEEDS OF NOTES AND MORTGAGES HELD SPECIFIC LEGACY.—Item of will disposing of proceeds of collection of notes and mortgages due testatrix *held* to create a specific legacy.

7. WILLS—BENEFICIARY HELD ENTITLED TO CERTIFICATES OF DEPOSIT REPRESENTING PROCEEDS OF MORTGAGES COLLECTED BY TESTATRIX AFTER EXECUTING WILL, UNDER CLAUSE BEQUEATHING PROCEEDS, 'THERE BEING NO ADEMPTION.—Where testatrix bequeathed proceeds of notes and mortgages, beneficiary *held* entitled to certificates of deposit representing proceeds of two mortgages collected by testatrix after execution of will, there being no ademption, notwithstanding general rule that if identical thing bequeathed does not exist or has been disposed of at time of testators' death, legacy is extinguished.

8. WILLS—RULE OF ADEMPTION IS APPLIED MORE STRINGENTLY TO LEGACY OF SPECIFIC PROPERTY THAN TO LEGACY OF PROCEEDS FROM SALE OF PROPERTY.—In construing wills, rule of ademption is applied more stringently to cases in which there has been a devise or legacy of specific property than to those where there is a legacy of proceeds from sale of property.

9. WILLS—LEGACY OF BANK STOCK, WATCH, SILVER, FURNITURE, AUTOMOBILE, "AND ALL PERSONAL PROPERTY * * * NOT MENTIONED HEREIN," HELD SPECIFIC.—Item of will disposing of shares of bank stock, gold watch, silver, household furniture, automobile, "and all personal property owned by me not mentioned herein," *held* to create specific legacy.

10. EXECUTORS AND ADMINISTRATORS—INTESTATE PROPERTY, LEGACIES AND DEVISES SHOULD BE APPLIED IN ORDER NAMED TO PAY DEBT OF TESTATRIX.—Where estate of deceased wife owed certain sum to estate of husband, who predeceased her, intestate property of wife must be first applied to payment of debt, then legacies, and, as last resort, devises.

Before BONHAM, J., Union, February, 1925. Modified.

Action by W. H. Gist and another, executors of the will

of Mrs. Dorcas L. Rice, deceased, against S. D. Craig and others, to have the rights of the parties under two wills adjudicated. From the decree, defendant L. R. Craig and others appeal.

The decrees of the Trial Court were as follows:

### DECREE DATED MARCH 18, 1925

Dr. L. S. Douglass, late of Chester County, S. C., departed this life in 1897 leaving of force his last will and testament of which his wife, Mrs. Dorcas L. Douglass, was the duly appointed and qualified executrix. She died January 2, 1924, not having been discharged as such executrix, and the defendant J. L. Glenn is the duly appointed administrator *de bonis non, cum testamento annexo,* of the estate of Dr. Douglass. Mrs. Dorcas L. Douglass married, as her second husband, J. G. Rice of Union County, S. C., and died January 2, 1924, leaving of force her last will and testament of which the plaintiffs W. H. Gist and James H. Glenn are the duly appointed and qualified executors. Questions have arisen of the proper construction of certain provisions of each of these wills upon which the parties in interest ask the determination of the Court. Hence this action, which is predicated on an agreed statement of facts, which action was heard by me at February, 1925, term of the Court of Common Pleas for Union County, in which county Mrs. Rice resided at the time of her death and where her will is probated.

The first question for adjudication arises in this wise: After making bequests to various of his kindred, Dr. Douglass, by the seventh paragraph of his will, provided, "I give and bequeath and devise to my beloved wife Dorcas L. Douglass, all of my real estate including moneys, bonds, stocks, notes, and mortgages, accounts and all other property of whatsoever nature to have and to hold the same during her natural life, and at the decease of my wife Dorcas L. Douglass I give and devise——" here follow sundry devises

and bequests in remainder with which we are not concerned. Item 14 of the will is as follows: "All the residue of my estate remaining at the death of my beloved wife Dorcas L. Douglass, I give and bequeath and devise equally to be divided between Sylvester D. Craig, son of J. E. Craig, and Dr. Lawrence Craig, son of John Craig, and L. Sylvester Harrison." L. Sylvester Harrison has died leaving as his sole heirs at law and distributees his daughters, Mrs. Louise Harrison Helms and Mrs. Lawrence Harrison Gamble, who take his share. At the time of his death Dr. Douglass owned 15 shares of the capital stock of the Winnsboro Bank, of the par value of $100 per share, which at the time of his death was worth $102 the share. After the death of Dr. Douglass two of these shares were retired by the bank at the value of $175 per share and the proceeds, $350, were paid to Mrs. Douglass. It is agreed that the remaining 13 shares of this stock have a present value of $240 the share, arising from undivided profits of the bank. At the time of the death of Mrs. Rice, the life tenant, there remained for distribution of the estate of Dr. Douglass only a tract of land, and this 13 shares of stock and the $350 arising from the retiring of the other two shares. We are not concerned in this action with the tract of land.

By Item 2 of her will Mrs. Rice provided as follows: "I give, devise and bequeath to Sylvester Douglass Craig, all of my shares of stock in the Winnsboro Bank, Winnsboro, S. C." It is admitted that Mrs. Rice received during her lifetime the income, or declared dividends, on this stock, and the $350 which is the value at which two shares were retired, which sum the executors have in hand, under the provisions of the will of Dr. Douglass, S. D. Craig, L. R. Craig, and Mrs. Helms and Mrs. Gamble (the last two representing their father, L. Sylvester Harrison), take the stock in the Winnsboro Bank at its value at the time of the death of the testator, to wit, $102, in the following proportions, one-third to S. D. Craig, one-third to L. R. Craig,

one-sixth to Mrs. Helms, and one-sixth to Mrs. Gamble, and this includes the two shares retired except as to the increase thereof. Do they take the remainder of the $350 and the undivided profits on the stock, undeclared and still in the hands of the bank, under this same provision of the will of Dr. Douglass, or do these go to S. D. Craig? In other words, did Mrs. Rice, the life tenant under the will of Dr. Douglass, have power to dispose of these accretions to the value of said stock, or are they a part of the capital of said stock, and pass under the provisions of the will of Dr. Douglass in relation to the disposition of this stock?

Perhaps no question has given rise to more discussion and diversity of legal opinion and adjudication than this. Two distinct lines of cases are traceable throughout these discussions and decisions, the one known as the "Massachusetts Rule" and the other as the "South Carolina Rule." The former holds that the life tenant enjoys the usufruct, the income from such bequests, but has no control over, nor power of disposition of, the undeclared, undivided increment or profits pertaining to the stock; and that these become a part of the *corpus* of the stock, and go with original *corpus.* To this rule the Courts of a number of the States adhere. The Courts of South Carolina, Pennsylvania, and Mississippi, notably, take the contrary view. It would be interesting to analyze these different views, and determine fundamentally which is the correct one, but in this case such course would entail a work of supererogation, because in this State the question is set at rest, in my opinion, by the case of *Wallace v. Wallace,* 90 S. C., 61; 72 S. E., 553, following *Cobb v. Fant,* 36 S. C., 1; 14 S. E., 959. In the able opinion of the Circuit Judge who heard the case of *Wallace v. Wallace,* whose opinion was affirmed on appeal, this was said: "While upon the subject of the distributions of dividends or earnings upon stock between life tenant and remaindermen the Courts are much divided,

I am of the opinion that the strongest consideration of reason and justice support the rule which apportions such dividends or earnings between life tenant and remaindermen according to the time when such earnings were made, and not according to the chance action of corporate officers in withholding or declaring dividends." This ruling is upheld in the strong opinion of Mr. Justice (now Chief Justice) Gary, and is the law in this State. Its wisdom and reason appeal irresistibly to our sense of justice. I therefore adjudge that Mrs. Rice had the power to dispose of the earnings and dividends undeclared or undivided, on the stock of the Winnsboro Bank, and these with the amount of the two retired shares, which is in excess of $102 per share, the value at the time of the death of Dr. Douglass, pass to Sylvester Douglass Craig under Item 2 of her will.

The second cardinal question in the case arises from apparent conflict in the provisions of Item 1, and the unnumbered clause following Item 5 of the will of Mrs. Dorcas L. Rice. Item 1 is as follows: "I give, devise and bequeath to Louise Douglass Harrison sixteen (16) shares of the National Loan and Exchange Bank stock in Columbia, S. C., my gold watch, all of my silver, household furniture, automobile and all of my personal property owned by me not mentioned herein." Items 2, 3, 4, and 5 make certain devises and bequests not involved in this action. The unnumbered Item of the will which follows immediately Item 5 is as follows: "All the rest and residue of my estate real and mixed I order converted into money as soon as can be conveniently done after my decease, for that purpose I do hereby authorize and empower my executors hereinafter named and the survivors of them to sell all of my real estate either by public or private sale, for the best price that can be gotten for the same and grant, convey and assure to the purchasers thereof in fee simple, collect all notes and mortgages due me and when all of my real estate has been sold

and all of my notes and mortgages collected I will and direct
that all monies collected from said sales be paid to the Ep-
worth Orphanage at Columbia, S. C., by my executors here-
inafter named." At the time of her death Mrs. Rice had
to her checking account in the Bank of Carlisle $4,445.73,
in Winnsboro Bank $767, in National Exchange Bank
$197.60. She had two certificates of time deposits issued
by the Bank of Carlisle, one for $5,693.35 and one for $2,-
076.49; Liberty bonds of the value of $2,500, nine shares
Am. Products Export and Import Corporation of the value
of $35, and four bales of cotton appraised at $570. I per-
mitted the introduction of testimony to show that the
amounts of $5,693.35 and $2,076.49 were derived from the
collection of two notes and mortgages, which collections
were made by Mrs. Rice after the execution of her will in
1916.

Mrs. Helms claims all of these sums under Item 1 of the
will of Mrs. Rice, and Epworth Orphanage claims them
under the so-called residuary clause thereof. This will was
drawn by a layman, a very intelligent man, the cashier of a
bank; but he was not versed in law, nor was he adept in the
art of drawing wills. I am not sure that his ineptness has
not resulted in the testatrix dying intestate as to the Items
above enumerated, except as to the two certificates of de-
posit. But intestacy is not favored by the law, and it
is manifest that the testatrix attempted, and intended, to
dispose of all of her estate. She uses the expression, "all
the rest and residue of my estate real and mixed," which
language can only mean that she thought she had disposed
of all her estate except that disposed of by this residuary
clause. The inquiry is pertinent then. What is disposed
of by this clause? It appears plain to me that she intended
to limit her benefactions to Epworth Orphanage to the pro-
ceeds of the sale of her real estate not otherwise thereinbe-
fore disposed of by her, and to the collections from her notes

and mortgages. She says so in so many words: "When all of my real estate has been sold and all notes and mortgages collected, I will and direct that all monies received from said sales and collections be paid to the Epworth Orphanage." It is true that the usual effect of a residuary clause is to dispose of all property not otherwise disposed of by testator, even if it be not named, but in this instance I am satisfied that Mrs. Rice thought she had disposed of all the property except certain real estate and her notes and mortgages and the proceeds of these she gave to Epworth Orphanage. Who then takes these moneys and bonds and stock and the proceeds of the cotton? It is shown that the sums of $5,693.35 and $2,076.49 covered by the two time certificates of deposit in the Bank of Carlisle are the proceeds of collections of two notes and mortgages held by Mrs. Rice at the time of the execution of her will in 1916, and which were thereafter collected by her. Clearly these pass under the residuary clause to Epworth Orphanage. As to these two notes and mortgages, Mrs. Rice did in her lifetime what she directed her executors to do after her death with the notes and mortgages then on hand. She kept these funds separate from other moneys not in these certificates, and they have been fully identified. It has been held that if lands are devised to an executor with direction that he sell and divide the proceeds among certain legatees, and the lands are sold by the testator in his lifetime—and where after his death there is no difficulty in identifying the proceeds of the property or some part thereof, the said proceeds will go to such legatees. 28 R. C. L., p. 647. *Miller v. Malone,* 100 Ky., 133; 58 S. W., 708; 95 Am. St. Rep., 338; and notes.

The only other legatee under the will of Mrs. Rice who can lay any claim to these assets of the estate is Mrs. Louise Harrison Helms, who claims under Item 1, which after enumerating specific articles of bequest concludes in this wise: "And all of my personal property owned by me not

mentioned herein." Item 2, 3, 4, and 5 give to the legatees therein named the specific articles therein named. We have seen that the residuary clause is confined by its expressed limitations to the proceeds of sales of real estate and collections of notes and mortgages. In no other Item of the will is disposition made of personal property not otherwise disposed of save in Item 1. Money, Liberty bonds, stock, cotton, are personal property, and I hold the words, "all of my personal property owned by me not the articles of personal property in dispute, to wit, the moneys on deposit as follows: In Bank of Carlisle $4,-445.73; in Winnsboro Bank $767; in National Exchange Bank $197.60. Also the Liberty bonds, valued at $2,500, the nine shares of stock of American Products Export & Import Corporation valued at $35, and four bales of cotton appraised at $570. I hold that these pass to Mrs. Louise Harrison Helms under Item 1 of the will of Mrs. Rice.

It is therefore ordered, adjudged and decreed:

That the administrator *de bonis non, cum testamento annexo* of the estate of Dr. L. S. Douglass pay the proceeds of sale of the 13 shares of stock of Winnsboro Bank remaining to said estate after the retiring of two shares thereof to the parties in interest at the value of $102 per share, as follows: One-third to S. D. Craig; one-third to L. R. Craig; one-sixth to Mrs. Louise Harrison Helms; and one-sixth to Mrs. Lawrence Harrison Gamble.

Also, that the executors of the last will and testament of Mrs. Dorcas L. Rice and the administrator *de bonis non, cum testamento annexo,* J. L. Glenn, pay to the defendant S. D. Craig all of the proceeds received from the sale of the 13 shares of stock in excess of their value at $102 per share, the said S. D. Craig being entitled to this increased value by reason of the terms of the will of Dorcas L. Rice.

Ordered further: That the executors of the last will and testament of Mrs. Dorcas L. Rice pay to J. L. Glenn, ad-

ministrator *de bonis non, cum testamento annexo* of Dr. L.
S. Douglass, the amount of $204, the value of two shares
of stock of Winnsboro Bank at the time of the death of Dr.
Douglass, and that said administrator *de bonis non, cum testamento annexo* pay out the same as follows: One-third
to L. R. Craig; one-third to S. D. Craig; one-sixth to Mrs.
Louise Harrison Helms; and one-sixth to Mrs. Lawrence
Harrison Gamble.

Ordered, further: That the executor of the last will and
testament of Mrs. Dorcas L. Rice pay to S. D. Craig the
sum of $146, the difference between the value, $102 per
share, of the two shares of stock of Winnsboro Bank at
the date of the death of Dr. Douglass, and the value thereof,
$175 per share, at the time said stock was retired.

Ordered, further: That the executors of the last will and
testament of Mrs. Dorcas L. Rice pay to Epworth Orphanage the amount of the two certificates of deposit in the Bank
of Carlisle, to wit, one for $5,693.35 and the other for
$2,076.49, and that they include any interest that has accrued on such certificates since the death of Mrs. Rice.

Ordered, further: That such executors pay to Mrs. Louise
Harrison Helms the sum of money on deposit to the checking account of Mrs. Rice as follows: $4,445.73 in the Bank
of Carlisle, $767 in Winnsboro Bank, and $197.60 in
National Exchange Bank. That they deliver to her the
Liberty bonds valued at $2,500 or pay her that amount in
lieu of such delivery, that they deliver to her nine shares
of the stock of American Products Export & Import Corporation, or pay to her the sum of $35 in lieu thereof. That
they deliver to her the four bales of cotton on hand at the
date of the death of testatrix, or pay to her the appraised
value thereof, viz., $570. Let the administrator *de bonis
non, cum testamento annexo* of Dr. Douglass, and the executors of the will of Mrs Rice, take their lawful commissions
from these various sums before paying them over. And let

the costs of this proceedings be paid by said administrator and executors out of the funds of the estates respectively. That the said administrator and executors pay to the attorneys in this action such reasonable fees for their services as shall be fixed by the Master for Union County to whom the matter is hereby referred.

Any of the parties to this action may apply at the foot of this decree for such further order as may be found to be necessary to carry into effect its provisions.

### DECREE DATED MAY 26, 1925

The above-entitled cause was heard by me at Union, February, 1925, term of the Court for the County, upon an agreed statement of facts, and the decree therein was filed March 19, 1925. After the decree was filed it was brought to my attention that there was an error in my statement of the facts as to the amount that was due from the estate of Mrs. Dorcas L. Rice to the estate of Dr. L. S. Douglass. I stated the indebtedness to be the 13 shares of the stock of Winnsboro Bank at the value of $102 the share, and $350, the amount for which two shares of the said bank stock had been retired since the death of Dr. Douglass, and which sum was paid to Mrs. Rice. It is conceded that in addition to the Items above enumerated the estate of Mrs. Rice owes the estate of Dr. Douglass the sum of $6,382.76. By consent of counsel the decree has been amended in conformity with these facts.

The decree provided that the administrator *de bonis non, cum testamento annexo* of the estate of Dr. Douglass, and the executors of the will of Mrs. Rice, "take their lawful commissions from these sums before paying them out." It was apprehended that this language might be construed to mean that the several legatees were to be charged with these commissions, whereas they are to be deducted from the corpus of the two estates, severally, before distribution is made.

On the hearing of the main case the question was not suggested, nor was it considered, from what funds of the estate of Mrs. Rice are the debts to be paid; therefore no ruling was made thereupon. The attorneys of all the parties in interest now come before me, and by written agreement submit the question to be in this form: "Out of what funds belonging to the estate of Mrs. D. L. Rice shall the debts due by her estate, including expenses of administration, commissions of her executors, and the amount due by her to the remaindermen under the will of Dr. Douglass be paid."

There is no contention over the order in which the debts of the estate are to be paid, to wit, as follows: Costs of administration; commissions; debts; specific legacies; general legacies. There will, I am sure, be no dispute over the statement of the rule that personal assets are first liable for the payment of expenses, debts, and legacies, if they be sufficient for that purpose.

The real issue in this case arises in this wise: Mrs. Rice by the first Item of the will bequeathed to Mrs. Louise Harrison Helms "sixteen shares of the National Loan and Exchange Bank in Columbia, S. C.; my gold watch, all my silver, household furniture, automobile, and all of my personal property owned by me not mentioned herein." By the last and unnumbered Item of her will she said: "All the rest and residue of my estate real and mixed I order to be turned into money as soon as can be conveniently done after my decease, for that purpose I do hereby authorize and empower my executors hereinafter named and the survivors of them to sell all of my real estate either by public or private sale for the best price, * * * collect all notes and mortgages due me and when all of my real estate has been sold and all of my notes and mortgages collected, I will and direct that all monies from said sales be paid to Epworth Orphanage."

It may be conceded that the property passing under the residuary clause is first liable for the payment of expenses, commissions, debts, and legacies. 40 Cyc. 2067; *McMullin v. Brown,* 2 Hill, Eq. 462. "As residue strictly means the remnant after the payment of debts and legacies the residue in this case is the primary fund for the payment of debts." Id.

The attorney for Mrs. Helms, legatee under Item 1 of the will, and the attorneys for Epworth Orphanage, legatee under the last and unnumbered Item of the will, cross words on the issue, Which of these is the residuary clause? No dispute arises that the Items of bank stock, household furniture, silverware, gold watch, and automobile bequeathed to Mrs. Helms by the first Item of the will is a specific legacy; but it is contended that the further words of that Item "and the personal property owned by me not mentioned herein" create a general legacy, and that it is therefore liable for the debts before specific legacies. As the testatrix thereafter by subsequent Items of her will disposes of other personal property, it is clear that the words "not mentioned herein" refer to the whole will and not to Item 1 alone. In *Pell v. Ball,* Speers Eq. 48, this is said: "Whether a legacy is specific or not, must, necessarily, depend upon the nature of the thing referred to * * * in the will. If the thing be capable of individuality, as a ring or picture; * * * or something capable of being separated by sensible distinctions, as the property on a particular estate; in all such cases, the descriptions in the will set forth with distinctness the subject of bequest, and make it specific. * * * It may be safely affirmed, I think, that whether a bequest couched in general terms is specific or otherwise, depends on this: If the things falling within the terms, when enumerated (or if they had been enumerated by the testator), are in their nature specific, then the legacy is specific; otherwise it is not." See, also, *McFadden v. Hefley,* 28 S. C., 317; 5 S. E., 812; 13 Am. St.

Rep., 675; *Warren v. Wigfall,* 3 Desaus., 47. "If the words clearly indicate an intention to separate the particular thing bequeathed from the general property of the testator, this will make it specific and the intention shall prevail." *Warren v. Wigfall,* 3 Desaus, 47. "That is certain which may be rendered certain." *Rogers v. Rogers,* 67 S. C., 172; 45 S. E., 178; (100 Am. St. Rep., 721).

Mrs. Rice gave to Mrs. Helms the articles of personalty enumerated in Item 1 of her will, "and all my personal property not herein mentioned." Thereafter in her will she gave to other persons the personal property she desired them to have. Items 2 and 3 carry specific bequests. Item 4 is a specific devise, and Item 5 a general legacy. There can be no uncertainty in ascertaining what other personal property she had; the inventory should show this, but if it does not it is competent to show it otherwise, and, being thus determined, it passed to Mrs. Helms, and is a specific legacy.

The attorneys for the orphanage insist that the first Item of the will is the residuary clause; with equal zeal the attorneys for Mrs. Helms insist that the unnumbered Item following Item 5 is the residuary clause. I concur in this last expressed view. It seems clear to me that Mrs. Rice when that Item was written thought that she had disposed of all of her estate except certain lands and her notes and mortgages; she directed that the land be sold and the notes and mortgages collected, and the proceeds paid to Epworth Orphanage. She speaks of this land and these notes and mortgages as the "residue" of her estate. The gift is of the proceeds of the sale of land—which, under the doctrine of equitable conversion, becomes personalty, and the proceeds of the collection of notes and mortgages.

It will be recalled that if the testatrix had by Items 1, 2, and 3 of her will made disposition by way of specific bequests, by Item 4 she had made a gift by way of specific devise; by Item 5 she gave a general legacy. Having thus

disposed of all of her property except some lands and her notes and mortgages, she by the unnumbered Item of the will, which follows Item 5, gave what remained, that is to say, the residue of her estate, to wit, the proceeds of the sale of the lands and the collections of the notes and mortgages to Epworth Orphanage. "Property constituting the residue of testator's estate and disposed of by the residuary clause of his will, is to be first applied in payment of his debts." 40 Cyc., 2067. "After certain legacies without any express provision of means of payment a residuary gift, blending the real and personal property of the testator, creates a charge of the legacies, the word residue implying that such payments be first made." 3 Jarman on Wills, note 14, p. 427.

I hold that the expenses, commissions, and debts of the estate of Mrs. Rice are to be paid from the proceeds of the sale of the land and collections of the notes and mortgages directed to be sold and collected by the unnumbered item of the will, and directed to be paid to Epworth Orphanage, because this unnumbered item is the residuary clause.

It is apparent from an inspection of the record in the original case, including the appraisal bill of the estate of Mrs. Rice, that this fund is sufficient to pay all the charges against the estate. It is therefore unnecessary to consider or determine what other funds would be liable if this were insufficient.

Wherefore, it is adjudged and decreed: That the funds belonging to the estate of Mrs. Dorcas L. Rice from which the debts due by her estate, including expenses of administration, commissions of her executors, and the amount due by her to the remaindermen under the will of Dr. Douglass, should be paid, are the funds which arise from the sale of lands, ordered to be sold, and the collections of notes and mortgages ordered to be collected by the unnumbered item

of the will, and which proceeds of sale and collections are directed to be paid to Epworth Orphanage.

I hold that the unnumbered item of the will is the residuary clause.

It is further ordered: That in order that any appeal from this decree may be heard along with the appeal from the former decree in the case, that the time to file exceptions to the former decree be extended 30 days from the filing of this decree.

*Mr. R. E. Carwile,* for appellant, L. R. Craig, cites: *Cases distinguished:* 90 S. C., 61. *Where life estate bequeathed with remainder over, Court will inquire only to see if estate at death of life tenant is substantially the same as that so devised or bequeathed:* III Rich. Eq., 160; Harper Eq., 294. *Undivided earnings are capital:* 10 Cyc., 563; 13 A. L. R., 1004; 12 L. R. A. (N. S.), 793; 136 U. S., 559; 119 U. S., 296.

*Mr. R. B. Caldwell,* for appellants, Louise Harrison Helms and Lawrence Harrison Gamble, cites: *Intent of testator governs construction of will:* 10 S. C., 354; 124 S. C., 451; 40 Cyc., 1388. *Cases distinguished:* 36 S. C., 1; 90 S. C., 1. *Undivided earnings are capital:* 10 Cyc., 563; 136 U. S., 549; 4 S. C. Eq., 611; 9 S. C. Eq., 294. *Testaments take effect at death of testator and are applied to estate as exists at that time:* 21 S. C. Eq., 283. *Specific legacy:* Speer's Eq., 48; 67 S. C., 172; 3 S. C. Eq., 48. *Administration of assets:* 8 S. C. Eq., 401.

*Messrs. Crouch & Ramage,* for appellant, Epworth Orphanage, cite: *Construction of will:* Gardner on Wills, 401, 402, 412; 24 Atl., 805; 26 N. E., 954; 23 N. Y. S., 734; 40 Cyc., 1541, 1542. *"Specific legacy":* 54 N. E., 278; 67 S. C., 171; Speer's Eq., 48; 28 S. C., 317; 92 Ky., 76; 4 Md. Ch., 484; 49 Md., 356; 76 Atl., 1042; 140 A. S. R., 575; 18 A. & E. Enc. L. (2nd Ed.), 715; 153 Ky., 44; 28 R. C. L., 290, Par. 263; 28 R. C. L., 647; 95 A. S. R., 338;

59 S. C., 185. *Certificates of deposit same as notes:* Sec. 3652, Code 11 C. J., 77.

*Mr. Charlton Durant,* for appellant respondent, Epworth Orphanage cites: *"General and specific legacies":* 76 S. C., 717; Bail. Eq., 409; 9 Rich. Eq., 100; 28 S. C., 323; 40 Cyc., 1877; 13 So., 785; 140 A. S. R., 575; 4 L. Ed., 460; 28 Rich., 291; 95 U. S., 591; 1 A. S. R., 161. *As to land:* 25 S. C., 149; 28 R. C. L., 302; 31 Am. Dec., 397; 5 A. S. R., 141. *Construction of will:* 23 N. Y. Supp., 189; 95 A. S. R., 362; 40 Cyc., 1555; 47 A. S. R., 107, 108; 104 N. Y. S., 478; 14 N. Y. S., 758; 57 Atl., 114; 139 S. W., 968; Sec. 3652, Code; 11 C. J., 77. *Under terms of certificate of deposit at bar there is a promise to pay to order a definite amount at a fixed rate:* Sec 3652, Code; 11 C. J., 77.

*Mr. J. Lyles Glenn, Jr.,* for respondent, cites: *Apportionment of undivided earnings and profits:* 36 S. C., 1; 90 S. C., 61; Harper Eq., 65; 14 Am. Dec., 697; 6 Fletcher's Enc. of Corp., 6208, Se. 3729; 31 Am. Dec., 522, Note; 57 Am. Dec., 587, Note; 45 L. R. A., 396, note; 63 L. R. A., 622, note; 12 L. R. A. (N. S.), 784, note; 24 A. L. R., 622, note; 12 L. R. A. (N. S.), 771; 209 N. Y., 450; 44 A. L. R., 24; 28 Pa., 368; 224 Pa., 144; 87 Atl., 975; 97 S. E., 122. *South Carolina rule is just rule:* 6 Fletcher Cyc. of Corp., 6208, Sec. 3729; 14 Gray, 274; 57 N. E., 1025. *Life tenant entitled to whatever income, increase or profits therefrom he may have realized from the personal property:* L. R. Ann., 1915-C, 846. *Cited generally:* 13 C. J., 829, 834; 17 R. C. L., 630, 633.

October 26, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

ORDER ON PETITIONS FOR REHEARING

*Per Curiam.* Upon consideration of the several petitions for a rehearing in this case, it is ordered that the opinion

heretofore filed be withdrawn, by reason of certain errors and omissions which the petitions have convinced the Court do exist therein, and that the accompanying opinion be substituted therefor as the judgment of this Court.

The revised opinion will be filed and the remittitur stayed for the usual period, with leave to any of the parties to file such petitions for a rehearing as they may be advised.

This is an action by the executors of the will of Mrs. Dorcas L. Rice, who was formerly Mrs. L. S. Douglass, against the defendants, who are legatees and devisees under her will and also under the will of Dr. L. S. Douglass, and the administrator *de bonis non, cum testamento annexo,* of the estate of Dr. Douglass, for the purpose of having the rights of the parties under both wills adjudicated. The case was tried upon an agreed statement of facts and certain testimony, by his Honor, Judge Bonham, who filed a decree dated March 18, 1925, and a supplemental decree dated May 26, 1925. Let his decrees be reported. The many and interesting questions at issue will appear as the facts are developed herein.

Dr. Douglass died in 1897, leaving of force a will in which Mrs. Douglass was appointed executrix. After providing for practically nominal legacies, he devised and bequeathed his entire estate to Mrs. Douglass for life, and at her death, after providing for certain devises and legacies which do not concern the present inquiry, he directed that the residue of his estate be divided equally among S. D. Craig, Lawrence Craig, and Sylvester Harrison. Sylvester Harrison has died leaving as his sole heirs-at-law the defendants, his daughters, Mrs. Helms and Mrs. Gamble.

At the time of his death Dr. Douglass owned 15 shares of the capital stock of the Winnsboro Bank, par value $100, which at that time was worth $102 per share. Mrs. Douglass took possession of this stock, and as long as she lived

(up to the time of her death January 2, 1924) received the dividends declared upon it. In 1905, the bank retired two of the shares at $175 per share, and paid the amount, $350, to Mrs. Douglass. It is agreed that the remaining 13 shares have a present value of $240 per share, arising from surplus and undivided profits. Mrs. Douglass, after the death of Dr. Douglass, inter-married with J. G. Rice of Union County. At the time of her death on January 2, 1924, there remained of the estate of Dr. Douglass a tract of land, with which this proceeding is not concerned, and the 13 shares of bank stock. She had never been discharged as executrix, and the defendant, J. L. Glenn, was duly appointed administrator, as aforesaid, of the estate of Dr. Douglass.

As stated, Mrs. Douglass, then Rice, died on January 2, 1924, leaving of force a will, in which the plaintiffs, J. H. Glenn and W. H. Gist, were appointed executors. By item 2 of her will she provided as follows: "I give, devise and bequeath to Sylvester Douglass Craig, all of my shares in the Winnsboro Bank, Winnsboro, S. C." As a matter of fact she had, under the will of Dr. Douglass, only a life estate in the bank stock; at her death it went to S. D. Craig, L. R. Craig, and the two daughters of Sylvester Harrison, Mrs. Helms and Mrs. Gamble; and here the judicial saw strikes the first knot in the "stock log."

The defendant, S. D. Craig, contends that the remaindermen under the will of Dr. Douglass (himself, L. R. Craig, and the two daughters of Sylvester Harrison) are entitled to the remaining 13 shares of the bank stock, but that he, as legatee under the will of Mrs. Rice, is entitled to the difference between $175 per share, the price at which two shares were retired, and $102, the value at the time of Dr. Douglass' death, $73 per share, $146, and to the increment which the 13 shares earned during her lifetime, the difference between $240, the present value per share, and $102, the value

at the time of Dr. Douglass' death, $138 per share, $1,794. The executors of Mrs. Rice do not contest the right of the remaindermen under the will of Dr. Douglass to the 13 shares of stock, but insist that both the $350 and the $1,794 belong to her estate. The coremaindermen with S. D. Craig, under the will of Dr. Douglass, contend that both of these funds are attached to the stock, and belong to them, with S. D. Craig, as remaindermen.

I. It is conceded that at the time of the death of Dr. Douglass in 1897, the bank stock was worth $102. per share, par value $100; when Mrs. Rice in 1905 received from the bank in cash $350 for the retirement of the two shares, she received $204, which may be considered the *corpus* of that fund, and $146, a distributed earning upon the stock. Under the authorities hereinafter considered in reference to the $1,794 item, the $146 should be considered as earnings distributed by the bank to the life tenant, and became her absolute property. She, however, became accountable to the remaindermen for the *corpus* of that fund, $204, but, being entitled to the income from the whole 15 shares during her lifetime, she was entitled to the interest which the $204 may have earned as long as she lived, and her accountability for interest began only at her death, January 2, 1924. S. D. Craig as legatee under the will of Mrs. Rice, is not entitled to either the $146 item or to the $204 item; as a coremainderman under the will of Dr. Douglass, he is entitled to one-third of $204, with interest from January 2, 1924, for which as for similar amounts to the other remaindermen the estate of Mrs. Rice must respond.

II. It is conceded that:

The present value of the remaining 13
shares of bank stock is $240 per share $ 3,120.00

The value at the time of the death of Dr. Doug-
lass was $102 per share ................ 1,326.00

Increased value ........................ $ 1,794.00
—or 240—102=138x13=1794.

This item is in the bank, included in its surplus and undi-
vided profits; it has never been distributed, allotted, or even
declared. The question is, who is entitled to it, the estate
of Mrs. Rice, S. D. Craig, or S. D. Craig and his coremain-
dermen.

His Honor, Judge Bonham, decreed that, under the deci-
sions of this Court, notably *Cobb v. Fant,* 36 S. C., 1; 14 S.
E., 959, and *Wallace v. Wallace,* 90 S. C., 61; 72 S. E., 553:

"Mrs. Rice had the power to dispose of the earnings and
dividends, undeclared or undivided, on the stock of the
Winnsboro Bank, and these with the amount of the two
retired shares which is in excess of $102 per share, the
value at the time of the death of Dr. Douglass, pass to
Sylvester Douglass Craig under item 2 of her will."

From this portion of the decree which will be first dis-
cussed, the remaindermen above named have appealed.

In the case of *Cobb v. Fant,* 36 S. C., 1; 14 S. E., 959, it
is difficult to see how the Court could have reached any
other conclusion than it did. The deed conveyed certain
bank stock to a trustee, and provided that the creator of
the trust should receive during her life "the dividends,
income, issues, and *profits* thereof," and at her death the
income and profits should be divided between her two daugh-
ters upon certain conditions and ulterior limitations. Dur-
ing the life of the creator of the trust, the corporation
decided to liquidate and divide its net assets among the stock-
holders. The Bank had prospered enormously, and at the
time of liquidation the stock was worth $400 per share,
par value $100. Dividends in the meantime had been paid;

the increment being due to surplus and undivided *profits.* His Honor, Judge Kershaw, on circuit, held:

"The accumulated dividends *are certainly profits* of the stock, and the general rule in such cases is that the profits enure to the life tenant, *and to the same purpose are the terms of this trust."*

It was not necessary for him to state his conception of the general rule; it was sufficient to declare, as he declared, *that the terms of this trust* settled the question, as doubtless it did. In the opinion Justice McGowan states this:

"He [the trustee] insists that in such case the rule is, that the enhanced price of stock, by reason of dividends earned, but not declared, will be considered as capital and must be reinvested for the benefit of the remaindermen, and cites authorities for the doctrine. Upon. general principles there may be some force in this view; *but here the trust deed is the law of the case.* The plaintiff had the right to make or not to make the deed, as she thought best, and making it, she had *the right to frame the terms as she pleased;* and she made them so strong that we do not feel authorized to disregard them in favor of any supposed general rule of practice upon the subject. The words are, 'In trust for my own use, that is, to pay the dividends, income, issues, and profits thereof, *as they may accrue* [italics by the Court], to me during the term of my natural life,' etc.,   \*   \*   \* *we must construe the deed according to its express terms."* —conclusive proof that the Court did not adopt the circuit Judge's dictum as to what was the "uniformly held" rule, but decided the case upon the express terms of the deed.

So in the case of *Wallace v. Wallace,* 90 S. C., 61; 72 S. E., 553, the will directed the trustees to whom the stock was bequeathed in trust, "to pay over to my said daughters, respectively, during their respective lives, the annual income, interest or *profits* of their respective shares." The increment in the value of the stock was due to the accumulation

in the bank of surplus and undivided *profits.* The Circuit Judge declared: "In my view, therefore, the inquiry resolves itself into whether or not the increment upon the shares in question should be regarded as income or *profits,* or as *corpus* of the trust estate"—and very properly held that the increment was *profits,* although not declared as dividends by the Bank. In the opinion of the Court, comparing the *Cobb case* with the *Wallace case,* it is said: "The *words in that case* [the Cobb case], which were construed to include the enhanced value of the shares of stock, are similar to those in the present case, and there is no difference in principle between the two cases"—showing that both cases were decided upon a construction of the terms of the instrument involved, rather than upon a supposed general principle that the devise or trust covering a life estate in stock, without specific terms entitling the beneficiary to the increment, carried, in addition to the right to dividends, the right to an increment due to surplus and undivided profits. It will be observed that in the case at bar the will of Dr. Douglass gave Mrs. Douglass only an interest in the stock for life, and it is only by implication that she became entitled to the dividends even; upon the theory that if she should not be allowed the dividends, a life estate in the stock would be worthless. Clearly, then, if she coulu rightly claim more than was simply impliedly given to her, an express provision would appear to be necessary. In the absence then of a provision in the gift that the life tenant shall be entitled to the increment due to surplus and undivided profits, under the practically unanimous rule, the remaindermen, and not the life tenant, gets it.

Several situations are presented in the decided cases, in which the conflicting interests of the life beneficiary and the remaindermen, under a bequest of corporate stock, as affecting accretions in the value of the stock, the result of accumulated surplus or undivided profits, are considered.

It is conceded of course that the life beneficiary is entitled to all dividends declared while his immediate estate continues, the undisputed income of the *corpus* of the fund. It is also conceded that if the terms of the trust or bequest provide that he shall also receive the accretions, the intention of the benefactor will control any general rule to the contrary. Where, then, the terms of the trust or bequest do not give the life beneficiary specifically a right to the accretions, and where no question arises as to the right of the life beneficiary to dividends, the situation referred to may be thus classified (as a matter of convenience the word "accretions" will be used as covering all that may enhance the value of the stock, by way of surplus, reserve, undivided profits, or otherwise) :

(1) Where the accretions are converted into a stock dividend, actually declared and issued, or ready to be issued, by the corporation.

(2) Where the corporation is engaged in the liquidation of its affairs and a distribution of its assets among the stockholders.

(3) Where the trustee, or the life beneficiary in cooperation with the remainderman, has actually by sale converted the stock into cash.

(4) Where the corporation has not converted its accretions into a stock dividend, or declared a dividend representing them, in cash, or is not in the process of liquidation, but is a going concern, holding among its assets such surplus and undivided profits, and where there has been no sale of the stock by the trustee or the life beneficiary and the remainderman.

It is manifest that the facts of the case at bar place it within the fourth class above described; there has been no declaration of a stock dividend, no declaration of a cash dividend; the corporation is not undergoing a process of liquidation; it is still a going concern holding the accretions

as a part of its assets; the life beneficiary and the remain-
derman have made no sale of the stock. The question is
whether under a will which does not *expressly* give the life
beneficiary the right *even to the dividends,* and under the
circumstances above detailed, the entirely *contingent* interest
of the life beneficiary can be considered *income* of the *corpus*
of the fund. (We do not, of course, question the right of
the beneficiary, *impliedly* conferred, to the dividends actu-
ally declared while she lived, and which have been regularly
paid to her.)

We may concede (though not to be understood as doing
so) that under the first three classes, the life beneficiary
would be entitled to the benefit of the accretions, without in
the slightest degree affecting our position in reference to
his rights under the fourth class. We have not been able
to justify a repudiation of the doctrine so clearly enunci-
ated in the case of *Gibbons v. Mahon,* 136 U. S., 549; 10
S. Ct., 1057; 34 L. Ed., 525, reaffirmed in several cases by
that illustrious Court, that where the accretions are con-
verted into a stock dividend, declared and issued by the
corporation, the stock dividend remains a part of the *corpus*
of the fund.

We would not consider it necessary to even refer to that
proposition, for the reason that no such condition confronts
the Court in this case, but for the apparent conception that
the *Cobb* and *Wallace cases* declare a different rule, not only
applicable but controlling, under entirely different condi-
tions. As we have endeavored to show, both of the cases
were determined upon the *express terms* of the trust deed
or will, and specifically stated to be independent of any gen-
eral rule upon the subject.

The *Cobb case* is not applicable for the reasons: (1)
Under the terms of the trust the life beneficiary was entitled
to "dividends, income, issues and *profits* thereof *as they may
accrue,*" the Court held that accretions in value of the stock

due to earnings constituted "profits." (2) The bank was in process of liquidation and the assets being distributed.

The *Wallace case* is not applicable for the reasons: (1) Under the terms of the trust the life beneficiaries were entitled to "the annual interest, income or *profits* of their respective shares," which is held in the *Cobb case* to have carried accretions. (2) The shares of stock had been sold by the trustees and the proceeds of sale were actually in their hands and out of the bank's protection or interest.

There has been much discussion as to the divergence of what are denominated the Massachusetts rule, the Pennsylvania rule, and the Kentucky rule. His Honor, the Circuit Judge, assumes that because the *Cobb v. Fant case* and the *Wallace v. Wallace case,* in his opinion, adopt the Pennsylvania rule, the question is no longer an open one in South Carolina. I do not think that any of the named rules have any application to the facts of the case at bar. They all have reference to an actual distribution of the undivided earning of the corporation and not, as in the case at bar, to the undistributed earnings.

The Massachusetts rule regards all cash dividends, however large, as income, and all stock dividends, however made, as capital, manifestly referring to cases where the earnings have been actually distributed either in the form of dividends or of new stock, representing the earnings.

The Pennsylvania rule is that the earnings when declared as dividends, whether in cash or stock, belong to the life tenant, provided the earnings have accumulated since the stock was held as a part of the trust estate. This, too, manifestly has reference to cases where the earnings have been actually declared either in the form of dividends or of new stock representing the earnings.

The Kentucky rule is like the Pennsylvania rule in that it makes no distinction between cash and stock dividends declared out of the surplus earnings, but differs from that

rule in holding that dividends, whether stock or cash, are nonapportionable, and are considered as accruing in their entirety as of the date when they are declared. This, too, manifestly has reference to cases where the earnings have been actually declared, either in the form of dividends or of new stock.

On the other hand, the case at bar is one where there has been no liquidation, no declaration of dividends from the accumulated earnings, and no stock dividends representing such earnings. It is not necessary, therefore, to make a choice from among the three rules referred to, for they all are applicable to a different state of facts.

We do not deem it necessary to waste any energy upon the second and third classes above referred to, as those conditions do not confront the Court. The *Cobb case* might be cited as sustaining the right of the life beneficiary to the accretions where the corporation is in process of liquidation; and the *Wallace case,* where the stock has actually, by sale, been converted into cash, though both cases, as heretofore shown, were decided upon the express terms of the deed of trust in the one case and of the will in the other.

Now, coming to the fourth class, precisely this case, where the corporation has not converted its accretions into a stock dividend, or declared a dividend representing them in cash, or is not in the process of liquidation, but is a going concern, holding among its assets such surplus and undivided profits, and where there has been no sale of the stock by the trustee or the life beneficiary and the remainderman: We think that the logic of Justice Gray in the *Gibbons v. Mahon case,* 136 U. S., 549; 10 S. Ct., 1057; 34 L. Ed., 525, is unanswerable, as applied to this phase of the question, even if the decision may not meet this Court's approval upon the matter of stock dividend, with which the Court in this case is not at all concerned. An extended extract from that opinion is justified. The Court says:

"The distinction between the title of a corporation, and the interest of its members or stockholders, in the property of the corporation, is familiar and well settled. . The ownership of that property is in the corporation, and not in the holders of shares of its stock. The interest of each stockholder consists in the right to a proportionate part of the profits *whenever dividends are declared by the corporation,* during its existence under its charter, and to a like proportion of the property remaining, upon the termination or dissolution of the corporation, after payment of its debts. *Van Allen v. Assessors,* 3 Wall., 573, 584 [18 L. Ed., 229]. *Delaware Railroad Tax,* 18 Wall., 206, 230 [21 L. Ed., 888]. *Tennessee v. Whitworth,* 117 U. S., 129, 136 [6 S. Ct., 645; 29 L. Ed., 830]. *New Orleans v. Houston,* 119 U. S., 265, 277 [7 S. Ct., 198; 30 L. Ed., 411].

"Money earned by a corporation remains the property of the corporation, and does not become the property of the stockholders, *unless and until it is distributed among them by the corporation.* The corporation may treat it and deal with it either as profits of its business, or as an addition to its capital. Acting in good faith and for the best interests of all concerned, the corporation may distribute its earnings at once to the stockholders as income; or it may reserve part of the earnings of a prosperous year to make up for a possible lack of profits in future years; or it may retain portions of its earnings and allow them to accumulate, and then invest them in its own works and plant, so as to secure and increase the permanent value of its property.

"Which of these courses shall be pursued is to be determined by the directors, with due regard to the condition of the company's property and affairs as a whole; and, unless in case of fraud or bad faith on their part, their discretion in this respect cannot be controlled by the Courts, even at the suit of owners of preferred stock, entitled by express agreement with the corporation to dividends at a

certain yearly rate, 'in preference to the payment of any dividend on the common stock, but dependent on the profits of each particular year, as declared by the board of directors.' *New York Lake Erie & Western Railroad v. Nickals,* 119 U. S., 296, 304, 307 [7 S. Ct., 209, 213; 30 L. Ed., 363].

"Reserved and accumulated earnings, so long as they are held and invested by the corporation, being part of its corporate property, it follows that the interest therein, represented by each share, is capital, and not income, of that share, as between the tenant for life and the remainderman, legal or equitable, thereof.

"Whether the gains and profits of a corporation should be so invested and apportioned as to increase the value of each share of stock, for the benefit of all persons interested in it, either for a term of life or of years, or by way of remainder in fee; or should be distributed and paid out as income, to the tenant for life or for years, excluding the remainderman from any participation therein; is a question to be determined by the action of the corporation itself, at such times and in such manner as the fair and honest administration of its whole property and business may require or permit, and by a rule applicable to all holders of like shares of its stock; and cannot, without producing great embarrassment and inconvenience, be left open to be tried and determined by the Courts, as often as it may be litigated between persons claiming successive interests under a trust created by the will of a single shareholder, and by a distinct and separate investigation, through a Master in Chancery or otherwise, of the affairs and accounts of the corporation, as of the dates when the provisions of the will of that shareholder take effect, and with regard to his shares only.

"In ascertaining the rights of such persons, the intention of the testator, so far as manifested by him, must of course

control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares."

" * * * The stockholders have no right to the dividends until they are declared, which may never be if the directors see fit to convert earnings into capital." *Bank v. Loewe,* 242 U. S., 357; 37 S. Ct., 172; 61 L. Ed., 360.

In *Towne v. Eisner,* 245 U. S., 418; 38 S. Ct., 158; 62 L. Ed., 372; L. R. A., 1918-D, 254, it is held that a stock dividend, representing undistributed earnings, is capital and not income.

The same ruling is made in *Eisner v. Macomber,* 252 U. S., 189; 40 S. Ct., 189; 64 L. Ed., 521; 9 A. L. R., 1570, where the Court says:

"Short of liquidation or until dividend declared, he has no right to withdraw any part of either capital or profits from the common enterprise; on the contrary, his interest pertains not to any part, divisible or indivisible, but to the entire assets, business, and affairs of the company. Nor is it the interest of an owner in the assets themselves, since the corporation has full title, legal and equitable, to the whole. The stockholder has the right to have the assets employed in the enterprise, with the incidental rights mentioned; but, as stockholder, he has no right to withdraw, only the right to persist, subject to the risks of the enterprise, and looking only to dividends for his return. If he desires to dissociate himself from the company he can do so only by disposing of his stock."

"In the present case there was no winding up or liquidation of the * * * company, nor any surrender of * * * (the stockholder's) stock. He was but one of many stock-

holders, and had but the ordinary stockholder's interest in the capital and surplus of the company, that is a right to have them devoted to the proper business of the corporation and to receive from the current earnings or accumulated surplus such dividends as the directors in their discretion might declare." *Lynch v. Hornby,* 247 U. S., 339; 38 S. Ct., 543; 62 L. Ed., 1149.

In 10 Cyc., 563, it is said:

"Another result of this view is that undivided earnings of a corporation are likewise regarded as capital; and hence as between the life tenant and the remaindermen the interest of such earnings represented by each certificate of stock, is an interest in the capital and not an interest in the income."

A stockholder in a corporation has no legal title to profits of the business until dividends have been declared, since profits, until division is made by the directors, are assets of the corporation and not income due to stockholders. *Waterman v. Alden,* 42 Ill. App., 294.

A stockholder has no title to the net earnings until a division is declared. *Minot v. Paine,* 99 Mass., 101; 96 Am. Dec., 705.

"A shareholder in a corporation has no legal title to the property or profits * * * until a division is made." *Hyatt v. Allen,* 56 N. Y., 553; 15 Am. Rep., 449.

"In the absence of any restraining statute, the corporation may treat * * * and deal with" the money earned by it, "either as an increase of its property or as profits of its business. So long as the corporation holds it as a part of the corporate property, it is capital of the corporation, and the interest therein, represented by each share," of stock "is capital and not income of that share, as between the tenant for life and remaindermen, legal or equitable, thereof." *Rand v. Hubbell,* 115 Mass., 461; 15 Am. Rep., 121.

15—S. C. R.—142

"Dividends are properly payable out or earnings, but it does not necessarily follow from the fact that earnings have been made that a dividend will be declared; the corporate officers may for some reason conclude not to declare a dividend. It is apparent that the failure of the corporate officers to declare dividends where there are earnings properly applicable thereto will result in an increased value to the corporate stock. It is apparent, also, that this increase is at the expense of the life tenant, from whom is withheld what is properly income." Note, 13 A. L. R., 1011.

"The fundamental principle involved in these questions is whether there has been a distribution or division of the earnings, profits, or accumulations of the corporation. Until there has been such division, the life tenant is not entitled to any increase in the value of the * * * trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund." *U. S. Trust Co. v. Heye,* 224 N. Y., 242; 120 N. E., 645.

(Aligned against the Massachusetts rule.)

In *Lauman v. Foster,* 157 Iowa, 275; 135 N. W., 14; 50 L. R. A. (N. S.), 531, it is held (*obiter*) that any enhancement in the value of the stock by reason of withholding the earnings of the corporation inures entirely to the benefit of the corpus, and the life tenant derives no advantage therefrom.

In *Connolly's Estate,* 198 Pa., 137; 47 A., 1125, it is held (quoting from note to 13 A. L. R., 1011):

"The increase in value of stock belonging to an estate, due in part to surplus earnings retained by the corporation to give it financial standing and meet losses, and in part to the enhancement of the original value of such stocks, belongs to the remainderman, and not to the tenant for life as income." (This Court aligned against the Massachusetts rule.)

In the case of *In re Cutler,* 23 Misc. Rep., 508; 52 N. Y. S., 842, it is held (quoting from note to 13 A. L. R., 1014):

"Under a will bequeathing stocks to a life tenant 'for her sole use and benefit, and subject to her control during her natural life,' an increase in the value of stock during the life tenancy belongs to the remainder estate.'

To the same effect is *Brewster v. Walsh* (D. C.), 268 F., 207, which quotes from the *Macomber case:*

"Enrichment throughout increase in value of capital investment is not income in any proper meaning of the term."

And from *Gray v. Darlington,* 15 Wall., 63; 21 L. Ed., 45:

"The mere fact that property has advanced in value between the date of its acquisition and sale does not authorize the imposition of the tax on the amount of the advance. Mere advance in value in no sense constitutes the gains, profits, or income specified by the statute. It constitutes and can be treated merely as increase of capital."

The Court further says:

"It has been held repeatedly that gains realized from the sale of capital assets held in trust are not income, but are principal, exactly as the securities were before they were sold; and that where a tenant for life is entitled to the entire net income of a fund, and the trustee realizes an advance in value by the sale of an investment, the life tenant is not entitled to the gain which is uniformly treated by the Courts as an increment to principal and a part of the *corpus* of the trust"—citing *Boardman v. Mansfield,* 79 Conn., 634; 66 A., 169; 12 L. R. A. (N. S.), 793; 118 Am. St. Rep., 178. *Carpenter v. Perkins,* 83 Conn., 11; 74 A., 1062. *Parker v. Johnson,* 37 N. J. Eq., 366. *Outcault v. Appleby,* 36 N. J. Eq., 74. *Matter of Gerry,* 103 N. Y., 445; 9 N. E., 235. *Thayer v. Burr,* 201 N. Y., 155; 94 N. E., 604. *Graham's Estate,* 198 Pa., 216; 47

A., 1108. *Neel's Estate,* 207 Pa., 446; 56 A., 950. *Lauman v. Foster,* 157 Iowa, 275; 135 N. W., 14; 50 L. R. A. (N. S.), 531. *Slocum v. Ames,* 19 R. I., 401; 36 A., 1127. *Jordan v. Jordan,* 192 Mass., 337; 78 N. E., 459. *Mercer v. Buchanan* (C. C.), 132 F., 501.

After citing a great array of authorities the West Virginia Court holds in the case of *Trust Company v. Rammelsburg,* 82 W. Va., 701; 97 S. E., 122:

"The theory of these decisions is that, until actually severed from its corporate assets, the earnings of a corporation cannot be deemed or held to be in any sense an income accruing to the holders of its shares. As profits or income, they legally belong to the corporation. It has full and complete title to them and dominion over them and right to treat them as its capital and use them as such in its business. In point of fact, they are generally so used, although sometimes carried on the books as surplus. They are not the property of the shareholder until divided and paid or delivered to him in such manner and to such an extent as to effect a transfer of the title and possession from the corporation to him. While they remain the property of the corporation, they enhance the value of the shares; but that does not make them the property of the shareholders nor an accrual to them as income any more than the enhancement of the value of real estate or personal property owned by an individual constitutes income." "Until there has been such division, the life tenant is not entitled to any increase in the value of the principal of the trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund." *U. S. Trust Co. v. Heye,* 224 N. Y., 242; 120 N. E., 645.

In the case in *In re Loewer's Estate,* 263 Pa., 517; 106 A., 789, the life tenant of corporate stock which had increased in value during the lifetime of the life tenant was

not entitled to such increase, which properly belonged to the remainderman.

"In absence of indication of testator's intention as to whether stock dividend, from earnings, be distributed as income among life tenants or held as part of *corpus* of trust estate for remaindermen, it must be held for remainder-men, and not distributed, as dividends may be, as income among surviving life tenants." *Harris v. Moses,* 117 Me., 391; 104 A., 703.

(Against the Massachusetts rule.)

"The value of stock may be increased by good management, prospects of business, and the like, but such increase is not income. It may also be increased by an accumulation of surplus; but so long as that surplus is retained by the corporation, either as surplus or increased stock, it can, in no proper sense, be called income. * * * Surplus and accumulated reserve funds, until set apart and appropriated by the corporation for the payment of dividends, are capital, and, whatever their magnitude may be, they are not, as between life tenant and remainderman, treated as income until they are distributed." *Smith v. Hooper,* 95 Md., 16; 51 A., 844.

"Accretions to trust fund from increase in value of securities composing its *corpus* are part of *corpus* and not 'income, revenues and profits of trust estate,' payable to life beneficiary." *In re Gartenlaub's Estate,* 198 Cal., 204; 244 P., 348; 48 A. L. R., 677.

(Against the Massachusetts rule.)

Justice Taylor of the Supreme Court of Vermont has written an extremely able and interesting opinion in the case of *Heaton's Estate,* 89 Vt., 550; 96 A., 21; L. R. A., 1916-D, 201, in which he disapproves of the *Gibbons v. Mahon Case* in 136 U. S., 549; 10 S. Ct., 1057; 34 L. Ed., 525, and the Massachusetts rule, holding that where a stock dividend *has been declared* out of accumulated earnings

since the creation of the trust, the stock dividend goes to the life tenant and not to the remainderman, in line with the Kentucky rule; but the fact that the dividend has been declared, either in cash or new stock, is the controlling element in the decision, which fact does not appear in the case at bar. His statement that the *Gibbons Case* "has never been reviewed by the Supreme Court * * * and so has only the weight of a single decision," was inadvertently made, as it has been recognized in *Bank v. Loewe,* 242 U. S., 359; 37 S. Ct., 172; 61 L. Ed., 360. *Railroad Co. v. Lowe,* 247 U. S., 338; 38 S. Ct., 540; 62 L. Ed., 1142. *Lynch v. Hornby,* 247 U. S., 341; 38 S. Ct., 543; 62 L. Ed., 1149. *Eisner v. Macomber,* 252 U. S., 202; 40 S. Ct., 189; 64 L. Ed., 521; 9 A. L. R., 1570. *Towne v. Eisner,* 245 U. S., 426; 38 S. Ct., 158; 62 L. Ed., 372; L. R. A., 1918-D, 254.

Even the Kentucky Court, which has gone the limit in protecting the life tenant, in opposition to the Massachusetts rule, holds:

"Until a dividend has been declared by the directors of a corporation acting in good faith, the shareholder has no legal claim upon its accumulated earnings, which will support an action against the corporation." "The accumulated earnings of a corporation before the declaration of a dividend are not income, as between the life tenant and the remaindermen in trust, for whom shares in such corporation are held, so long as the shares remain a part of the trust estate."

The above is quoted from the syllabus of the case.

The Court declares in its opinion:

"To entitle the life tenant to any part of the accumulated earnings of a corporation, it is essential that a dividend be declared by the corporation while the shares are held in the trust." *Guthrie v. Akers,* 157 Ky., 649; 163 S. W., 1117.

The Court cites a number of Kentucky cases which sus-

tain the above conclusion; demonstrating that its extreme position as to the rights of the life beneficiary applies only where a dividend, cash or stock, has actually been declared.

See, also, *Letcher v. Bank,* 134 Ky. 24; 119 S. W., 236; 20 Ann. Cas., 815. *Bank v. Lee* (Ky.), 66 S. W., 413.

In the Court of Tennessee, which is aligned with other Courts which repudiate the Massachusetts rule, it is held, quoting syllabus in *Tubb v. Fowler,* 118 Tenn., 325; 99 S. W., 988;

"Where a widow was entitled under her husband's will to the income of bank stock, the portion of surplus and undivided profits * * * apportionable to the shares could not be regarded as 'income'."

The Court said:

"Upon authority, we are satisfied that they form no part of the income of these Banks. As is said * * * in *Phelps v. Farmers', etc., Bank,* 26 Conn., 269, in speaking of undivided profits: 'Nothing can be income to the stockholder that has not been made so by the act of the corporation. The profits of a bank no matter when made, until separated from the stock by declaring a dividend, are mere increment and augmentation of the stock. They are properly stock themselves, composing a part of the stock of the bank, and will pass with the stock under that name, either by contract or by levy of execution.' And this is equally true as to undivided surplus. * * * Until the directors or shareholders, acting as a body, have determined otherwise, the title and control of these funds are absolutely in and with the corporation. [Citing 1 *Cook Corp.,* § 11; 2 *Clark & Marshall,* § 517; *Marawetz,* § 344; 2 *Beach,* § 620]. * * * It is upon [this] basis * * * that the Courts have uniformly held that a shareholder has no legal title to any of its property until the corporation sees proper to part with its dominion over it, by making a division * * * in the form of a dividend."

The Mississippi case, *Simpson v. Millsaps,* 80 Miss., 239; 31 So., 912, so strongly relied upon to sustain the respondent's position, is not applicable for two reasons: (1) Under the Court's construction of the will, "all *accretions* to the *corpus,*" "all the profits it produced," were annually devoted to the support, maintenance, and education of the life beneficiaries. (2) The bank stock shares, the corpus of the trust, were actually sold by the trustees at a price largely advanced from the time of the inception of the trust, and the proceeds which represented in part said accretions and profits were in the hands of the trustees, not in the undistributed mass of assets of the bank.

Wonderfully illuminating notes upon the subject are found in 13 A. L. R., 1009, and 24 A. L. R., 9.

The rationale of these decisions strongly appeals. The corporation is the legal owner of all of its assets, including, of course, the money set aside for surplus, reserve, or undivided profits. To create such a reserve fund is a policy of good business everywhere, in personal as well as corporate affairs. It stabilizes the financial credit of the corporation; it secures stockholders from statutory assessments; it provides a fund for needed improvements, repairs or expansion. The fact that a stockholder cannot go into Court and demand, as a matter of right, the application of earnings to dividends, without showing fraudulent conduct on the part of the managing directors, is conclusive that under normal conditions, honest administration, the disposition of the earnings is a corporate function. So long as it may be under the control of the corporation, it is impossible to conceive that it is income to the stockholder. If the Court should hold that such accretions are income to which the life beneficiary is entitled, how is it to enforce its decree? It certainly cannot levy an assessment against the remainderman to make up the interest which the life beneficiary has. It certainly cannot order the remainderman to sell his

stock; he may want to hold onto it for better prices or for better control of the corporation. He has the legal title to the stock subject to the life interest. How is the Court to compel a man to part with his prospective interest for the benefit of the life beneficiary to whom he owes nothing? The corporation certainly cannot be compelled to pay the difference. Who, then, is to pay it?

It appears therefore indisputable that the $1,794 item has become attached to and is a part of the 13 shares of stock and goes to the remainderman under the will of Dr. Douglass.

III. The next matter for consideration is the contention of Mrs. Helms that she is entitled to the money which Mrs. Rice had on deposit in the Bank of Carlisle, in the Columbia Bank, and in the Winnsboro Bank, at the time of her death, and other property hereinafter referred to, under item 1 of Mrs. Rice's will.

It appears that at the time of her death Mrs. Rice had to the credit of her ordinary checking account in the Bank of Carlisle $4,445.73, and under similar conditions in the National Exchange Bank $197.60, and in the Winnsboro Bank $767. She also had in her possession at the time two time certificates of deposit issued by the Bank of Carlisle, one for $5,693.35 and the other for $2,076.49, a total of $13,-180.17, practically in cash, Liberty bonds of the value of $2,500.00, 9 shares American Products Export & Import Corporation of the value of $35 and 4 bales of cotton appraised at $570.00; a grand total of $16,285.17.

Item 1 of Mrs. Rice's will provides:

"I give, devise and bequeath to Louise Douglass Harrison sixteen shares of the National Loan & Exchange Bank Stock in Columbia, S. C., my gold watch, all of my silver, household furniture, automobile and all personal property owned by me not mentioned herein."

Louise Douglass Harrison is Mrs. Helms. This is the item under which she claims the above sum aggregating $16,285.17.

His Honor, the Circuit Judge, held, in reference to the items other than the certificates of deposit, aggregating $8,515.33:

"In no other item of the will is disposition made of personal property not otherwise disposed of save in Item (1). Money, Liberty bonds, stock, cotton are personal property, and I hold the words 'All of my personal property owned by me not mentioned herein' are sufficiently comprehensive to include the articles of personal property in dispute."

It does not appear when these items were acquired or from what source. They may have existed at the time the will was executed or they may have been acquired thereafter. It is more than probable that they were acquired afterward; else these would most likely have been referred to specifically in the will. It is not improbable that their source was proceeds of collections from notes and mortgages, but, as this has not been shown, they fall under the general rule of ademption, having been mingled in unidentified form with her other property.

The question is whether they are covered by Item 1 of Mrs. Rice's will. That item gives to Mrs. Helms 16 shares of bank stock, gold watch, all silver, household furniture, automobile, *"and all personal property owned by me not mentioned herein."* Inasmuch as Items 2, 3, 4 and 5 of the will cover land, shares of stock and money, and not articles which, while technically "personal property," in the common acceptation of the terms cover articles more directly associated with the *person,* and as the inventory shows that Mrs. Helms received such articles as pictures, books, sewing machine, umbrellas, etc., under Item 1, I think that the expression "all personal property owned by me not mentioned herein," has reference to Item 1, and not to the

will generally, and was intended to cover articles which the testatrix owned for her personal use and enjoyment, articles of a personal nature similar in character to those enumerated, and did not cover any of the items making up the aggregate of $8,515.33, which consists mainly of choses in action. It seems unreasonable to suppose that the testatrix intended, while bequeathing property to Mrs. Helms, worth about $3,500, she should in addition, under a questionable provision, receive $8,500.

In *Gardner, Wills,* 401, 402, it is said:

"The effect of any general word in a will may be affected by the rule, of universal application in the construction of statutes or documents of any description, that where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly to be understood to cover only things of a like kind with those enumerated. Thus where a bequest was made 'of all my housekeeping articles including household furniture, beds, bedding, * * * books, pictures, all my wardrobe, and all other articles of personal property in the house at the time of my death belonging to me.' It was held not to cover certain promissory notes in the house belonging to the deceased.

"But it is a sound rule of interpretation, that when an author makes use * * * of terms, * * * evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things *'ejusdem generis,'* i. e., of the same kind or species, with those comprehended by the preceding limited and confined terms." *Ex parte Leland,* 1 Nott & McC., 460.

"There is no question that general and unlimited terms are restrained and limited by particular recitals when used

in connection with them, whether they are found in the recital of a bond or covenant, or any other writing, or used in ordinary conversation, for the obvious reason that they convey a more definite idea, and are therefore less liable to misconception." *Treasurers v. Lang,* 2 Bail. 430.

To the same effect are 36 Cyc., 1120; 25 A & E. Enc. L., 1012. *Alabama v. Montague,* 117 U. S., 602; 6 S. Ct., 911; 29 L. Ed., 1000. 3 *Words and Phrases, First Series,* p 2328. 8 *Words and Phrases, First Series,* p. 7647. 2 *Words and Phrases, Second Series,* p. 225. *State v. Williams,* 2 Strob., 474. *Commissioners of Public Accounts v. Greenwood,* 1 Desaus., 450. *U. S. v. Fisher,* 2 Cranch, 358; 2 L. Ed., 304. *U. S. v. Baumgartner* (D. C.), 259 F. 722. *U. S. v. R. Co.* (C. C. A.), 222 F., 33. *Hills v. Joseph* (C. C. A.), 229 F. 865. 2 *Lewis' Sutherland,* Stat. Const., 814, cited by his Honor, Judge Watkins, in the case of *Southern Railroad Co. v. Columbia Compress Co.* (C. C. A.), 280 F., 344. Also *Andrews v. Schoppe,* 84 Me., 170; 24 A., 805. *In re Reynolds,* 124 N. Y., 388; 26 N. E., 954. *Tallman v. Tallman,* 23 N. Y. S., 734; 40 Cyc., 1541, 1542. *Misch v. Russell,* 136 Ill., 22; 26 N. E., 528; 12 L. R. A., 125.

In *Bond v. Martin* (Ky.), 76 S. W., 326, the will devised and bequeathed her residence with all its contents "furniture, bedding, silver, everything in or about the premises, *all personal property wherever it may be.*" The Court held that the words italicized were only intended to apply to the property described and other like personal property and did not cover bank stock held by her. The case of *Andrews v. Schoppe,* 84 Me., 170; 24 A., 805, is particularly instructive.

The items aggregating $8,515.33 under discussion did not pass to Mrs. Helms under Item 1 of Mrs. Rice's will; They did not pass to the orphanage under the unnumbered

clause; they are intestate property to be administered as such.

IV. As to the contention of the Epworth Orphanage that it is entitled to the whole of the $16,285.17, above referred to, under Mrs. Rice's will:

The unnumbered paragraph of the will which follows immediately Item 5, is as follows:

"All the rest and residue of my estate real and mixed, I order to be converted into money as soon as can conveniently be done after my decease, and for that purpose I do hereby authorize and empower my executors hereinafter named and the survivors of them, to sell all of my real estate either by public or private sale for the best price that can be gotten for same and grant, convey and assure to the purchaser or purchasers thereof in fee simple, *collect all notes and mortgages due me* and when all of my real estate has been sold *and all notes and mortgages collected,* I will and direct that all monies received from said sales and collections be paid to the Epworth Orphanage at Columbia, S. C., by my Executors hereinafter named."

The orphanage claims the $16,285.17 under this item. His Honor, the Circuit Judge permitted the introduction of testimony to the effect that the two certificates of deposit issued by the Bank of Carlisle, for $5,693.35 and $2,076.49, represented the proceeds of two mortgages, collected by Mrs. Rice after the execution of her will in 1916, and held that the orphanage was entitled to the two certificates of deposit, total $7,769.84, and that Mrs. Helms was entitled to the deposits in the three banks, $4,445.73, $767 and $197.60, and the Liberty bonds, $2,500, American Products Export & Import Stock, $35, and the 4 bales of cotton, $570; a total $8,515.33.

From this part of the decree both the orphanage and Mrs. Helms have appealed, each claiming all of the $16,-285.17.

The claim of the orphanage to the above items aggregating $8,515.33, which he held Mrs. Helms entitled to, is properly disposed of by his Honor, the Circuit Judge, in the following extract from his decree:

"It appears plain to me that she intended to limit her benefactions to Epworth Orphanage to the proceeds of the sale of her real estate not otherwise thereinbefore disposed of by her, and to the collections from her notes and mortgages. She says so in so many words: ' When all of my real estate has been sold and all notes and mortgages collected, I will and direct that all moneys received from said sales and collections be paid to the Epworth Orphanage.' It is true that the usual effect of a residuary clause is to dispose of all property not otherwise disposed of by testator, even if it be not named, but in this instance I am satisfied that Mrs. Rice thought she had disposed of all the property except certain real estate and her notes and mortgages, and the proceeds of these she gave to Epworth Orphanage."

The apparent comprehensiveness of the unnumbered clause of the will, which is considered by the Circuit Judge as a residuary clause, is specifically limited to what the testatrix apprehended the *residuum* to be, the tract of land and the notes and mortgages. As to the two certificates of deposit aggregating $7,769.84, the Circuit Judge held that they represented the proceeds of two mortgages collected by Mrs. Rice after the execution of her will; that as to these mortgages Mrs. Rice did in her lifetime what she directed her executors to do after her death, with the notes and mortgage which she anticipated would be on hand at that time, and that she kept these funds separate from other moneys not in these certificates of deposit which have been fully identified. He accordingly held that the orphanage was entitled to the two certificates of deposit.

Two questions arise in the consideration of the main question as to this contention of the orphanage: (1) Is the legacy of the proceeds of the notes and mortgages referred to in the unnumbered clause a specific legacy? (2) If a specific legacy, has ademption of the legacy followed the collection of two of the notes and mortgages referred to?

There can be no doubt but that the legacy is a specific legacy, under the principles announced in *Rogers v. Rogers,* 67 S. C., 171; 45 S. E., 176; 100 Am. St. Rep., 721, where the testator bequeathed to a legatee all the claims held by the testator against his father and all interest in the father's estate, and in which the Court held:

"The legacy in question is specific, because the debts or claims given, whether considered with reference to the evidences thereof, or with reference to the money that may be received thereon, are particularly distinguished and separate from all other property of the testator. The claims are designated as those which the testator holds against the estate of his father, things easily identifiable and, in fact, particularly described in the complaint."

In that case the doctrine declared in *Crawford v. McCarthy,* 159 N. Y., 519; 54 N. E., 278, appears to be approved: "A bequest to an individual of the proceeds of a bond or mortgage particularly describing it, is a specific legacy."

But the other question, whether, assuming the legacy to be specific, it has been adeemed by the collection of the two mortgages by Mrs. Rice after the execution of her will, is a difficult one. The general rule, conceded, is that:

"If the identical thing bequeathed is not in existence, or has been disposed of so that it does not form a part of the testator's estate, at the time of his death, the legacy is extinguished or adeemed, and the legatee's rights are gone."

Counsel for the orphanage seek to ingraft upon this rule an exception, to the effect that if the testator during his lifetime, has conveyed the property bequeathed, or collected the debt the proceeds of which were directed by the will to be paid to the legatee, and the proceeds can be traced and identified in cash, property, or securities, the legacy has not been adeemed, but may be recovered out of the altered form in which it has been traced and identified. In this effort they should succeed.

In the case of *In re Black's Estate,* 223 Pa., 382; 72 A., 631, the testator bequeathed the *proceeds* of two bonds to two legatees. The bonds were paid off during the lifetime of the testator and the proceeds invested in a mortgage. After his death the mortgage was paid. It was held that the legatees of the bonds were entitled to the proceeds and that a claim that the legacies had been adeemed could not be sustained. The Court said:

"The testator bequeathed, not the bonds, but the proceeds; and the learned Court below has found as a fact, upon sufficient testimony, that the proceeds of these bonds, identified and ear-marked, are intact, ready for distribution to the parties entitled thereto. This finding of fact relieves the whole situation from difficulty. The very thing bequeathed by the testator—that is, the proceeds of two certain bonds—being in existence and belonging to him at the time of his decease, there is no rule of law which would deny the legatees the right to demand and receive what the will in terms gave them. The learned Judge who delivered the opinion of the Court *en banc* very properly and pertinently said: 'Ademption of a specific legacy arises by the alienation or destruction of the object. It is now clear that the thing devised has neither been alienated or destroyed. The proceeds being traced out and identified at the time of testator's death, the legacy will take effect.' *Nooe v. Vannoy,* 59 N. C., 185. The proceeds of these

bonds, being the thing devised, were in fact kept apart from
the testator's estate by the mortgage investment. There-
fore the argument in favor of extinction and ademption
falls."

"The general rule is, that where a testator, after making
his will, sells the property given, the legacy is adeemed. But
where the proceeds of the sale of property are given to
children, and the will intimates that the sale is to be made
by the testator himself who does make it, and no substi-
tution or equivalent is made for such legacy, and the pro-
ceeds are re-invested, and are traceable, it was held not to
be a case of the ademption of the legacy by a sale of the
property." *Nooe v. Vannoy,* 59 N. C., 185.

See, also, *Connecticut Company v. Chase,* 75 Conn., 683;
55 A., 171.

"In the case under consideration the bequest to the Dur-
ham children was the proceeds of the sale of certain real
estate; that is, a money bequest. Were these bequests
adeemed by a sale of this property by the testatrix in her
lifetime, and the investment of the proceeds of such sale
in other real estate, mortgage notes, etc.? Applying the
rule above announced, if this property has been kept in spe-
cie and can be traced and identified, then it would seem that
the legacy is not adeemed; otherwise, it is." *Durham v.
Clay,* 142 Ky., 96; 134 S. W., 153.

In *Miller v. Malone,* 109 Ky., 133; 58 S. W., 708; 95
Am. St. Rep., 338, the syllabus is:

"A will devising land to the executor in trust to sell same
and divide the proceeds among certain persons operated
merely as a bequest of the proceeds of the land, and there-
fore a sale by the testator in his lifetime was not an ademp-
tion of the legacy, though the legatees were not the heirs
of the testator."

The Court said:

"At the death of the testatrix there was no trouble to identify the remaining part of the proceeds of the house and lot. The substance of the bequest remains, and her act simply facilitated the testator [executor?] in carrying out the provisions of the will."

I think that the syllabus should have included the element of identification.

In 1 Roper, Legacies, § 246, it is said:

"Where the terms of the bequest are so comprehensive as to include within their compass the fund specifically bequested, altho' it has undergone considerable alteration since the date of the will. For since the substance of the thing given, viz., the debt or money, remains, and the subsequent alteration of security does not prevent it from answering the description in the will, the principles upon which the ademption of the specific legacies is founded do not apply."

In the case at bar, the money, the proceeds of the mortgages having been traced to the certificates of deposit, identified, is in all fairness as much the proceeds of the collection, as if they had been made by the executors as directed in the will.

In *Cornwell v. Church,* 73 W. Va., 96; 80 S. E., 148, a fund out of which a legacy was provided, described as "coal money," was invested by the testatrix in her lifetime in two interest-bearing municipal bonds. Upon the question of ademption, the Court said:

"After the bonds had been purchased, they were left in the bank, marked as the property of the testatrix. Thus the form of the fund was changed from a deposit in the bank to an investment in bonds, and, on this change of form, there is based a claim of ademption, or destruction of the legacy, but the authorities do not sustain this position. The fund had not ceased to exist, nor in any way been destroyed or lost at the date of the death of the testatrix. It remained in an altered form, and the legacy had not been satisfied by

any advancement in her lifetime. That such a change does not work an ademption of the legacy is well settled by authority. Page on Wills, §§ 779, 781."

In *Prendergast v. Walsh,* 58 N. J. Eq., 149; 42 A., 1049, the legacy was of "whatever of my money now on deposit," in four banks in New York City, naming them, "which may be on hand and not otherwise disposed of." During her life the testatrix drew her money out of the four banks and deposited it in another bank where it remained until her death. The Court held that the legacy was specific and that it had not been adeemed.

In *Georgia Infirmary v. Jones* (C. C.), 37 F., 750, the Court said:

"So far as the authorities which are cited for the complainants declare that bequests by which the collections or proceeds, or the amount to be received from a particular claim or fund, are given to legatees, are not defeated when the proceeds are received by the testator in his lifetime, and have been kept by him so as to be distinguishable from the rest of his estate, they are acceded to as undoubtedly correct. They proceed upon the distinction between the gift of a *debt qua debt,* and the gift of a sum of money to arise when the debt shall have been recovered and ceased to exist as a debt. In a gift of the latter class it may be inferred that the testator contemplated the recovery of the debt in his own lifetime, and intended to give, not the debt itself, but the amount to be received in respect of it. When the bequests are of this character, the fund received by the testator in his lifetime may be followed through its transmutations, and reached, if capable of identification."

See, also, *Merrill v. Winchester,* 120 Me., 203; 113 A., 261.

A distinction is drawn in many of the cases above cited, between a devise or legacy of specific property and a legacy of the proceeds from the sale of the

property. The rule of ademption is applied more stringently to the first class.

His Honor the Circuit Judge, was entirely right in sustaining the claim of the orphanage to the certificates of deposit issued by the Bank of Carlisle.

V. It is conceded that the estate of Mrs. Rice owes the estate of Dr. Douglass $6,832.76, with interest from the date of her death January 2, 1924, and under the foregoing conclusion $204, with similar interest. The question is presented, Out of what assets of her estate shall these debts and other expenses connected with the administration of her estate be paid? At the time of the hearing of this appeal, it appeared that there would be no question but that the intestate property, consisting of bank deposits and personal property, would be amply sufficient to take care of these debts. Since that time, however, the Bank of Carlisle, in which there was a deposit of $4,445.73, about 50 per cent. of the fund constituting the intestate property, has gone into liquidation, making it inevitable that other assets than this must be drawn from for the payment of the debts, and the question is what shall they be?

His Honor, the Circuit Judge, held that recourse must first be had to the proceeds of the sale of the real estate and the collection of notes and mortgages covered by the unnumbered clause bequeathing these assets to the Epworth Orphanage, upon the ground that this clause constituted the residuary clause, and must respond before resorting to the specific legacies. We have held that this legacy to the Epworth Orphanage was a specific legacy, and as a consequence the foregoing conclusion of the Circuit Judge must be reversed.

We think that his Honor, the Circuit Judge, correctly held that the legacy to Mrs. Helms in Item 1 of Mrs. Rice's will was a specific legacy, for the reasons stated by him.

Of course the intestate property must first be applied to the payment of the debts. Should there be a deficiency after such application, the same shall be made up out of the legacies to Mrs. Helms, Sylvester D. Craig, Wm. H. Gist, and the Epworth Orphanage *pro rata*, and, as a last resort, out of the real estate devised to W. H. Gist, Jr. No reference is made to the pecuniary legacy to the church, as it is apprehended that no contribution from it would be considered.

Upon the subject of the application of assets to debts, see *Warley v. Warley*, Bailey, Eq., 397. *Pinckney v. Pinckney*, 2 Rich. Eq., 218. *Hull v. Hull*, 3 Rich. Eq., 65. *Farmer v. Spell*, 11 Rich. Eq., 541. *Moore v. Davidson*, 22 S. C., 93. *Frasier v. Littleton*, 100 Va., 9; 40 S. E., 108.

The judgment of this Court is that the judgment and decrees of the Circuit Court be modified as hereinbefore indicated and that the case be remanded to that Court for further proceedings consistent herewith.

Mr. Chief Justice Watts, and Messrs. Justices Blease, Stabler, and Carter, concur.